**William D. CURE and Ernest F. Linhardt, d/b/a Cure-Linhardt Construction Company, Appellants,**

v.

**CITY OF JEFFERSON, Respondent,**

Schwarz & Van Hoefen, Architects, Arthur F. Schwarz and Hari Van Hoefen, Defendants.

No. 50305.

Supreme Court of Missouri,

Division No. 1.

July 13, 1964.

Tweedie Fisher, Jefferson City, for appellants.

Thomas P. Rose, Bond & Dominique, P. Pierre Dominique, John O. Bond, Jefferson City, for respondent.

**306**

WELBORN, Commissioner.

This is an action by the general contractors under a contract with the City of Jefferson for the contruction of a municipally owned parking facility. The petition sought recovery from the City of $62,898.94 for the removal of rock in the excavation for the project. The architects for the facility were originally named party defendants. The trial court sustained a motion for summary judgment made by each defendant. The contractors have appealed from the judgment in favor of the City. No appeal was taken from the judgment in favor of the architects. We have jurisdiction of the appeal because of the amount in controversy.

The petition alleged that the plaintiffs, a partnership, entered into a contract, in June, 1961, with the defendant City for the construction of a parking garage for a base contract amount of $301,730.64, plus a unit price for general rock excavation and hand excavated pier rock in excess of 300 cubic feet at $2.00 per cubic foot; that the plaintiffs excavated 31,449.47 cubic feet of rock and, on October 17, 1961, submitted to the City their statement for payment in the amount of $62,989.94, which the City refused to pay. A copy of the contract between the plaintiffs and the City was incorporated by reference in the plaintiffs' petition.

The defendant City by its answer admitted the execution of the contract, but denied generally the allegations of plaintiffs' petition. The City also denied liability on the grounds of failure of plaintiffs to comply with provisions of the contract relating to the procedure to be followed before making a claim for extra compensation over and above the base bid and general contract sum.

After the deposition of plaintiff Cure had been taken, the City filed its motion for summary judgment, based upon the provisions of the contract as set out in the plaintiffs' petition and statements of Cure on his deposition. The motion relied specifically upon the following provisions of the contract documents: (1) Article 3 of the basic agreement (AIA Standard Form of Agreement Between Contractor and Owner for Construction of Buildings), which read as follows:

"ARTICLE 3. THE CONTRACT SUM. The Owner shall pay the Contractor for the performance of the Contract, subject to additions and deductions provided therein, in current funds as follows: Three Hundred One Thousand Seven Hundred Thirty and 64/100 Dollars ($301,730.64), which amount has been determined as set forth in summary of costs determining the General Contract sum and attached hereto as Exhibit A; said summary being in turn determined from the bid of the General Contractor, alternates and fee for management and administration of Mechanical and Electrical Contracts, based on bid dated May 18, 1961 (attached hereto), and the following bids of Sub-Contractors, alternates, and other requirements (also attached hereto), as follows:

"Natkin & Co.—Combined bid on Heating, Ventilating & Snow Melting and Plumbing & Drainage

"Stokes Electric Co., Inc.—Electric Work."

(2) Section 5 of the Specifications relating to excavation, backfilling and filling (incorporated by reference as a part of the contract), which provided as follows:

"6. ITEMS OF WORK

"a) Remove existing earth, existing footings and all other items required to be removed.

"b) Do all necessary rough grading for floors, walks, drives, etc.

"c) Include removal of 300 cubic feet of rock as a part of the base bid for excavation, backfilling and filling.

"2. (e) Material to be excavated is assumed to be earth and materials that can be removed by power shovel. If rock (as defined below) is encountered, the contract amount shall be adjusted in accordance with unit prices. *ROCK* shall be interpreted to mean stone, boulders, or concrete that cannot be removed by a power shovel ½ cu. yd. capacity, without the use of explosives or drills. No blasting shall be done without written consent of the Owner."

(3) The following provision of the bid form submitted by plaintiffs, likewise incorporated by reference as part of the contract:

"UNIT PRICES

"1. Excavation, Backfilling, Filling & Grading—Section 5

"a) Unit price for excavation of:
    "1. Common by machine              $ 1.00 per cu. yd.
    "2. Common by hand                $10.00 per cu. yd.

"b) Unit Price for excavation of:
    "1. Rock excavation of more than 300 cu. ft.
                $2.00 per cu. ft.
    "2. Rock excavation of less than 300 cu. ft.
                $3.00 per cu. ft."

———◆———

(4) Articles 15 and 16 of the General Conditions of the Contract (AIA Standard Form), which read as follows:

"ARTICLE 15. CHANGES IN WORK. The owner, without invalidating the contract, may order extra work or make changes by altering, adding to or deducting from the work, the contract sum being adjusted accordingly. All such work shall be executed under the conditions of the original contract except that any claim for extension of time caused thereby shall be adjusted at the time of ordering such change.

"In giving instructions, the architect shall have authority to make minor changes in the work, not involving extra cost, and not inconsistent with the purposes of the building, but otherwise, except in an emergency endangering life or property, no extra work or change shall be made unless in pursuance of a written order from the owner signed or countersigned by the architect, or a written order from the architect stating that the owner has authorized the extra work or change, no claim for an addition to the contract sum shall be valid unless so ordered.

"The value of any such extra work or change shall be determined in one or more of the following ways:

"a) By estimate and acceptance in a lump sum.

"b) By unit prices named in the contract or subsequently agreed upon.

"c) By cost and percentage or by cost and a fixed fee.

"If none of the above methods is agreed upon, the contractor provided he receives an order as above, shall proceed with the work. In such case and also under case (c), he shall keep and present in such form as the architect may direct, a correct account of the cost, together with vouchers. In any case, the architect shall certify to the amount, including reasonable allow-

ance for overhead and profit, due to the contractor. Pending final determination of value, payments on account of changes shall be made on the architect's certificate.

"Should conditions encountered below the surface of the ground be at variance with the conditions indicated by the drawings and specifications the contract sum shall be equitably adjusted upon claim by either party made within a reasonable time after the first observance of the conditions.

"ARTICLE 16. CLAIMS FOR EXTRA COST. If the Contractor claims that any instructions by drawings or otherwise involve extra cost under this contract, he shall give the architect written notice thereof within a reasonable time after the receipt of such instructions, and in any event before proceeding to execute the work, except in emergency endangering life or property, and the procedure shall then be as provided for changes in the work. No such claim shall be valid unless so made."

(5) Paragraphs 10 and 11 of the Special Conditions of the Contract, which provide as follows:

"10. CHANGES IN THE WORK. Article 15 of the 'General Conditions' is hereby modified. The third paragraph shall read: 'The value of any such extra work or change shall be determined in one or the other of the following ways:

" 'a) By estimate and acceptance in lump sum.

" 'b) By unit prices named in the contract or subsequently agreed upon.

" 'c) By cost and percentage or by cost and a fixed fee.

" 'Reasonable time' in the fifth paragraph is hereby defined as five days.

"11. CLAIMS FOR EXTRA COST. Article 16 of the 'General Conditions' is hereby amended as follows: 'A reasonable time is hereby defined as five days.' "

The motion further relied upon the statements of plaintiff Cure in his deposition that, at the time the rock was encountered in the excavation work, he determined that in excess of 300 cubic feet of rock would be required to be removed and that he intended to charge for the rock so removed, but that he made no request for a change-order; that the City was not informed that the alleged rock had been removed until sometime after it had been excavated; that the first written notice to the defendant City was in the form of a partial billing in the amount of $30,000; that Cure was aware of the provisions of the specifications with respect to change-orders and additions to the contract sum.

Based upon the deposition of Cure, the motion alleged that the plaintiffs failed to comply with the conditions of the contract necessary for the compensation for the removal of the alleged rock in the following respects: "(a) Plaintiffs failed to notify the defendant City within five days after acquiring knowledge of the alleged rock which was in variance with the conditions indicated by the drawings and specifications as provided by Articles 15 and 16 of the general conditions of the contract. (b) Plaintiffs failed to notify the defendant City in writing before removing said alleged rock as provided by Article 16 of the general conditions of the contract. (c) Plaintiffs failed to obtain written authority from the defendant City to remove said alleged rock as provided by Article 15 of the general conditions of the contract. (d) Plaintiffs failed to notify the defendant City that they intended to claim an additional amount, over and above the contract price for the removal of said rock as provided by Article 16 of the general conditions of the contract."

The City moved for summary judgment on the grounds that plaintiffs' failure to comply with the foregoing provisions of the contract precluded recovery by plaintiffs on their claim. The trial court sustained the City's motion and entered judgment against the plaintiffs. After their motion for new trial had been overruled, plaintiffs appealed to this court.

On this appeal, the plaintiffs' contention is stated in their "POINTS RELIED ON" as follows:

"Appellants were obligated under the contract to do all necessary work of excavation, irrespective of whether the material excavated was earth or rock, or whether the rock was more or less than 300 cubic feet. The specifications, constituting part of the contract, required the contractor to submit his bid in an amount sufficient to cover all excavation costs on the arbitrary assumption that no rock would be encountered, but nevertheless to include in the base bid the cost of 300 cubic feet of rock excavation and expressly provided that if rock was encountered, the contract amount to be paid by defendant shall be adjusted on the basis of applicable unit prices, either upward or downward, dependent upon whether the actual quantities of rock excavation was more or less than the 300 cubic feet included in the base bid. Appellants submitted their bid in accordance with the specifications whereby the cost of excavating only 300 cubic feet of rock was included, but with the express contractual agreement they would be paid for all rock excavation in excess of 300 cubic feet at the unit prices applicable to such excess by an appropriate automatic adjustment of the contract price. Inasmuch as the total material excavated pursuant to the terms of the contract included a quantity of rock substantially in excess of 300 cubic feet, appellants are entitled as of right, under the plain language of the contract to be compensated therefor by an adjustment of the contract amount made in strict accordance with the contract to include the agreed price for the rock excavation in excess of 300 cubic feet."

They further contend that removal of rock in excess of 300 cubic feet was not extra work and that their claim for compensation was not an item of extra cost within the meaning of Articles 15 and 16 of the General Conditions of the Contract and, therefore, plaintiffs were not required to notify the City in accordance with the terms of those articles or to obtain the approval of the City before undertaking the removal of rock in excess of 300 cubic feet.

The defendants assert that the plaintiffs' failure, admitted by Cure on his deposition, to comply with the requirements of Articles 15 and 16 of the General Conditions of the Contract precluded their recovery and that, therefore, summary judgment was properly entered.

Summary judgment is authorized where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Civil Rule 74.04(c), V.A.M.R. "In no case shall a summary judgment be rendered on issue triable by jury or the court without a jury unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law." Id. 74.04(h), V.A.M.R.

In this case the motion for summary judgment is based upon the pleadings which incorporated the contract documents by reference and the admissions of plaintiff Cure on his deposition. Plaintiffs filed no affidavits in opposition to the motion. While it may have been well in this case for plaintiffs to have filed an affidavit setting forth what factual issues they contended exist in the case, their failure to do so does

not require that judgment be entered against them. Rule 74.04 does not "require the grant of summary judgment in a case where such judgment is not proper even though the facts be taken as in the moving party's affidavit. The court may deny the motion if for any reason summary judgment may be inappropriate, even though the opposite party has not submitted an affidavit." Report of Federal Advisory Committee on Rules of Civil Procedure, as quoted in Committee Note, Missouri Civil Rule 74.04, 2 V.A.M.R., page 281. In any event, the trial court was required to determine that the defendant's motion and supporting material showed unassailably as a matter of law that the defendant was entitled to judgment. Any doubt of such regard is resolved against the defendant. Parmelee v. Chicago Eye Shield Co., 8 Cir., 157 F.2d 582, 168 A.L.R. 1130.

The fact issue that may be assumed to have been resolved by Cure's deposition was that the plaintiffs did not give the written notice or receive the written authorization which the defendant by its answer alleged was required as a condition to the plaintiffs' recovery for the removal of the rock. However, conceding that such facts have been established, they would entitle defendant to judgment as a matter of law only if the defendant's interpretation of the contract is also, as a matter of law, unassailable.

A motion for summary judgment, premised upon an interpretation considering only the words of the contract, may be a proper procedure in the case of a contract, the meaning of which is so apparent that it may be gleaned from the four corners of the instrument itself. Bethlehem Steel Company v. Turner Construction Company, 2 N.Y.2d 456, 141 N.E.2d 590, 63 A.L.R.2d 1331. However, the proper discharge of the judicial function in a case in which the parties to an agreement disagree as to its meaning and effect ordinarily requires something further than a mere examination and consideration of words employed in the written contract. This is implicit in the standard of interpretation found in the Restatement of the Law of Contracts (Section 230, page 310) as follows:

"The standard of interpretation of an integration, except where it produces an ambiguous result, or is excluded by a rule of law establishing a definite meaning, is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral statements by the parties of what they intended it to mean."

(We are here dealing with an integration as defined by the Restatement. Id. Section 228, page 307.)

The Restatement further sets out the following rules to aid the application of the standards stated in Section 230 (Section 235, page 319):

"(c) A writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together.

"(d) All circumstances accompanying the transaction may be taken into consideration, subject in case of integrations to the qualifications stated in Section 230.

"(e) If the conduct of the parties subsequent to a manifestation of intention indicates that all the parties placed a particular interpretation upon it, that meaning is adopted if a reasonable person could attach it to the manifestation."

Comment on Clause (d) of the foregoing includes the following (Id. Section 235, page 324):

"The court in interpreting words or other acts of the parties puts itself in

the position which they occupied at the time the contract was made. In applying the appropriate standard of interpretation even to an agreement that on its face is free from ambiguity it is permissible to consider the situation of the parties and the accompanying circumstances at the time it was entered into—not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning to be given to the agreement."

Professor Corbin states:

"Therefore, it is invariably necessary, before a court can give any meaning to the words of a contract and can select one meaning rather than other possible ones as the basis for the determination of rights and other legal effects, that extrinsic evidence shall be heard to make the court aware of the 'surrounding circumstances,' including the persons, objects, and events to which the words can be applied and which caused the words to be used." 3 Corbin on Contracts, Section 536, page 28.

■ Whether or not such approach is "invariably necessary," we do consider that in this case the court, before undertaking the interpretation of the contract, should have had the benefit of relevant evidence of the surrounding circumstances, of any applicable customs and usages of the building construction industry, of the parties' own interpretation of the contract and any other evidence which might properly shed light upon the proper interpretation of the contract.

Admittedly, as we referred to above, plaintiffs filed no affidavit in opposition to the motion for summary judgment which indicated that they had relevant admissible evidence in such regard. However, the contract documents themselves, taken with Cure's deposition, show that there was a question of interpretation of the contract which had to be resolved before the validity of the City's defense in this regard could be determined. The contract documents did, as the City points out, specify a lump sum amount as the contract sum. However, this provision of the contract made the amount specified "subject to additions and deductions provided (in the contract)." The court was required to determine whether or not this language meant, as the City contends, only additions and deductions made pursuant to Articles 15 and 16 of the General Conditions or whether or not, as the plaintiffs contend, the provision of the excavation specifications that "the contract amount shall be adjusted in accordance with unit prices in the event that rock is encountered" was sufficient to authorize an addition to the contract price within the meaning of Article 3 of the contract. The specifications did call for the assumption that the material to be excavated was earth, not rock. However, the specifications further required the bidder to assume that 300 cubic feet of rock would have to be removed in the excavation and an additional 700 cubic feet of rock for the drilled piers. We have no way of knowing whether or not the test boring analyses, which were also set forth in the specifications, showed that the assumptions above referred to were based upon information which the sample drillings revealed or whether they were, as plaintiffs contend, merely an arbitrary assumption, employed in construction contracts such as this, with the parties fully aware that a much larger volume of rock would be encountered and would have to be removed. In his deposition Cure testified that he was reasonably certain, based upon the test borings, that more than 300 cubic feet of rock would have to be removed.

The General Conditions did require that the contractor give notice of conditions encountered below the ground which were at variance with the conditions indicated by the drawings and specifications. However, without some light on the information imparted by the test borings, it would be impossible to determine whether or not

**312**

the conditions actually encountered were at variance with what might have been indicated by that portion of the specifications. If the test borings had indicated conditions at variance with the assumptions found elsewhere in the specifications, the question of which provision of the specifications prevailed must also have been resolved.

Similar questions are presented in the determination of whether the work in question was "extra work" within the meaning of Articles 15 and 16. "Extra work" in construction contracts has been defined as "work of a character arising outside and entirely independent of the contract—something not required in its performance, not contemplated by the parties, and not controlled by the contract." Frank T. Hickey, Inc. v. Los Angeles Jewish Community Council, 128 Cal.App.2d 676, 276 P.2d 52, 58. See also Blair v. United States, D.C., 66 F.Supp. 405, 408; 17A C.J.S. Contracts § 371(6), page 410.

Without expressing any opinion on the proper interpretation of the contract as applied to the claim here involved, we are of the opinion that the motion for summary judgment in this case did not show that defendant was, as a matter of law, entitled to judgment. That question should be resolved only upon an interpretation of the contract in the light of the surrounding circumstances, applicable customs and usages, the parties' own interpretation of the contract and other evidence bearing on the question of its meaning.

Therefore, the judgment of the trial court is reversed and the cause remanded for further proceedings.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the judges concur.