**E. O. DORSCH ELECTRIC CO.,**
a Corporation, Appellant,

v.

**PLAZA CONSTRUCTION CO., Inc., et al.,**
Respondents.

No. 52411.

Supreme Court of Missouri,
Division No. 2.

April 10, 1967.

Cox, Cox, Cox & Moffitt, William A. Moffitt, Jr., Robert C. Brinkman, St. Louis, for plaintiff-appellant.

Peper, Martin, Jensen, Maichel & Hetlage, Richard A. Hetlage, Robert O. Hetlage, Greensfelder, Hemker, Wiese, Gale & Chappelow, Mark R. Gale, St. Louis, for respondents.

STOCKARD, Commissioner.

By its petition plaintiff sought damages in the amount of $21,086.30 for negligence. The trial court entered summary judgment for defendants and plaintiff has appealed.

Plaintiff alleged in its petition that as a subcontractor it had "installed under a contract with the general contractor, various kinds of electrical material" in buildings known as the St. Louis Plaza Project in the City of St. Louis, and that following such installation and "while defendants were engaged in erecting and constructing the brick and concrete on said buildings, said defendants, their agents and servants, negligently and carelessly damaged and destroyed certain parts of the electrical work and material which had been previously installed in said buildings by plaintiff, causing said work, labor and material to be unfit for use, which required plaintiff to and it did replace the same, all to the damage of plaintiff in the sum of $21,086.30."

In answer to a request for admissions pursuant to Civil Rule 59.01, V.A.M.R., plaintiff admitted that "the electrical material originally installed and the work and labor originally required to install the same, was installed under one or more" of four contracts, attached to the request for admissions, and subsequently identified, but it further stated that after the execution of the contracts they were "changed and modified by agreement of the parties." No explanation was made as to what the asserted changes and modifications consisted.

Thereafter, defendants filed a motion for summary judgment on the theory that pursuant to the provisions of the applicable contracts plaintiff did not own and had no interest in or duty to restore any electrical material or work allegedly damaged by the negligence of defendants, that plaintiff had a contract right to full payment for any repair or replacement work done by it at the request of the general contractor, and that for these reasons as a matter of law plaintiff did not and could not sustain any damage as the result of the alleged negligence. Defendants filed an affidavit in support of their motion for summary judgment to which were attached the four subcontracts referred to in plaintiff's answer to the request for admissions, and to which were also attached four groups of instruments, three instruments in each group applicable to each of the subcontracts. Each group of instruments pertain to the construction of a separate project, and the corresponding instruments in each group are similar. We shall refer to the terms of but one subcontract and the terms of the three instruments referred to therein.

Instrument "B" was a "cost plus" construction contract between First Plaza Redevelopment Corporation as "Owner" and Plaza Construction, Inc. as "Contractor" for "all the materials and * * * work within the property lines, shown on the drawings and specifications." Instrument "C" was a deed of trust between the Owner and Manufacturers Trust Company with the Mercantile Trust Company being named as Trustee. Instrument "A-1" was an agreement between Owner and Paul Tishman General Contractor, Inc., and Fruin-Colnon Contracting Company, operating as a joint venture and referred to as "Agents," wherein it was provided that Agents were in effect to represent the Contractor in the performance of the contract with authority to negotiate subcontracts. Instrument "A" was a subcontract between Agents and plaintiff wherein it was provided that plaintiff was to perform certain electrical work provided for in the contract between Owner and Contractor, and was one of the contracts referred to in the re-

quest for admissions and plaintiff's answer thereto. All of these instruments were attached to and incorporated as a part of defendants' motion for summary judgment, and although plaintiff stated in its answer to the request for an admission that Instrument "A" had been "changed and modified by agreements of the parties," at the hearing on the application for summary judgment plaintiff filed no affidavit and offered no proof to the effect that the terms of any of the instruments attached to the application for summary judgment were not as therein set forth.

The trial court found that the "terms of the contract are not in dispute," and further found the facts as follows: "The contract gave the defendants the right to occupy any portion of the work 'which has been either partially or fully completed' by the subcontractor, and it further provided 'The subcontractor shall not be responsible for any damage thereto that is due to or caused by the negligence of the contractor or agents during such period of use.' The contract makes full provisions for any work required to be done other than that specifically set out therein. In view of the above, it would appear that under the pleadings, exhibits and affidavits, there is no issue presented, and that the defendant[s] [are] entitled to judgment."

On this appeal plaintiff asserts that the trial court erred in sustaining defendants' motion for summary judgment because "there were, under the pleadings and affidavits, many fact issues to be determined." Defendants, on the other hand, contend that summary judgment was properly entered "because the written contracts between plaintiff and defendants establish conclusively that plaintiff did not own and had no interest in or duty to restore the work allegedly damaged by the negligence of defendants, that plaintiff had a contract right to full payment for any repair or replacement work done by it, and that plaintiff did not and could not sustain any damage by reason of the alleged negligence of defendants."

Prior to considering the applicable provisions of the contracts, we shall set forth briefly the basic rules relating to entering summary judgment.

■■■ Summary judgment is authorized where, but only where, the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Civil Rule 74.-04(c), V.A.M.R. In addition to the above, it is further provided that "In no case shall a summary judgment be rendered on issue triable by jury or the court without a jury unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law." Civil Rule 74.04(h), V.A.M.R. "As its name indicates, a summary judgment is an extreme and drastic remedy and great care should be exercised in utilizing the procedure," Cooper v. Finke, Mo., 376 S.W.2d 225, 229, and the appellate court, as well as the trial court, must view the record on summary judgment in the light most favorable to the party against whom the judgment is rendered. Anderson v. Steurer, Mo., 391 S.W.2d 839, 842.

■■■ In this case the motion for summary judgment is based upon the pleadings, which incorporated the contract documents by reference, and the admissions of plaintiff in its answer to the request for admissions. Plaintiff filed no affidavits in opposition to the motion for summary judgment, a circumstance hardly understandable in view of its assertion in its answer to the request for an admission that the subcontracts to which it was a party had been "changed and modified by agreements of the parties." Civil Rule 74.04(e) provides in part that "When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If

he does not so respond, summary judgment, if appropriate, shall be entered against him." The failure of plaintiff to file any counteraffidavit or present any proof in respect to the motion for summary judgment forces us to accept as true, for the purposes of this appeal, that there is no factual issue concerning the terms of the contracts attached to the motion for summary judgment. However, this omission on the part of plaintiff does not necessarily require that judgment be entered against it. As stated in Cure v. City of Jefferson, Mo., 380 S.W.2d 305, 310, "Rule 74.04 does not 'require the grant of summary judgment in a case where such judgment is not proper even though the facts be taken as in the moving party's affidavit. The court may deny the motion if for any reason summary judgment may be inappropriate, even though the opposite party has not submitted an affidavit.'" One reason summary judgment may be inappropriate under the circumstances of a particular case is that the moving party may not have shown by "unassailable proof" that as a matter of law it was entitled thereto. Defendants' position in respect to the motion for summary judgment is that plaintiff was required by the subcontract to provide and install the electrical material therein called for, that once installed the material became the property of the Owner, and that there was no contractual duty on plaintiff to install the material a second time if the installed material was subsequently damaged by reason of the negligence of defendants. For this reason, defendants contend, negligent damage by them of previously installed electrical material would not result in plaintiff having a cause of action against them. Accepting, as we do, the resolved fact issue as to terms and provisions of the contracts, defendants were entitled to judgment as a matter of law only if their interpretation of the contracts is also, as a matter of law, unassailable. To this end we shall examine the terms of the contracts.

Instrument A, consisting of the subcontract between plaintiff and Agents, provided that plaintiff should provide and furnish all work, materials, services, tools, labor, equipment and supplies necessary or required to perform and complete the electrical work required for a described building in the construction of St. Louis Plaza Project in accordance with (a) the terms and provisions of the contracts between the Owner and Contractor dated October 14, 1958 (Instrument B), and the Contractor and the Agents dated October 14, 1958 (Instrument A–1), and (b) the terms and provisions of the escrow and disbursing agreement between Contractor, Owner and Title Insurance Company of St. Louis, and (c) all plans, drawings, specifications, general and special conditions, and addenda relating to the doing of specified work. It was further provided that these instruments, identified as "Contract Documents," should be considered part of the subcontract, and that the "Subcontractor agrees to be bound to the Contractor and Agents by the terms of the Contract Documents insofar as each and every part thereof is applicable to this Subcontract," and also that "The Subcontractor herewith assumes towards the Contractor and the Agents any and all obligations and responsibilities applicable to the Subcontractor's work which by the foregoing Contract Documents the Contractor assumes towards the Owner, the Lender (mortgagee) the Federal Housing Administration or Commissioner, and the Title Insurance Company of St. Louis."

Paragraph 17 of Instrument A–1 (the contract between Contractor and Agents) provided that "The title of all materials for which Owner is required to pay and of all work either completed or in the course of construction shall be in Owner."

Article 5 of Instrument B (the contract between Owner and Contractor) provided that it was understood by the Contractor that the work to be done was to be financed by a building loan secured by a mortgage insured by the Federal Housing Commis-

sioner, the terms of which were set forth in a Building Loan Agreement between the Owner as Borrower and Manufacturers Trust Company as Lender, and it was provided in Article 4 that "Applications for payment under this Contract are to be made by the Contractor to the Owner, * * * on or about the first day of each month after the commencement of work hereunder, for payment for work done during the proceeding month or part thereof."

In addition to the above provisions which were quoted by defendants in their motion for summary judgment, it was further provided in Article 4 that:

"The sum to which the Contractor shall be entitled upon any such payment shall be the total of the purchase price of uninstalled materials stored on the mortgaged property in a manner acceptable to the [Federal Housing] Commissioner plus the cost of the portions of the work acceptably completed, as approved by the Commissioner, computed in accordance with the amounts assigned to the several items in the Payment Breakdown, * * * less 10% and less prior advances. * * *.

"Upon completion of the improvements, * * * the balance due the Contractor hereunder shall be payable to the Contractor upon the expiration of 30 days from the date of final completion and acceptance of the project by the Owner with the approval of the Commissioner and the Lender: * * *."

In Instrument C it was provided that the deed of trust covered, among other items, "all building materials and equipment now hereafter delivered to said premises and intended to be installed therein," and "all buildings and improvements of every kind and description now or hereafter erected or placed thereon, and all fixtures, including but not limited to all gas and electric fixtures * * *."

Defendants quote from Section 3 of the subcontract, but before we mention those provisions we shall set out certain provisions of Section 2 of that contract. It is there provided that if plaintiff as subcontractor "shall fulfill this Subcontract to the satisfaction of the Contractor, Agents, Owner and Lender, the Contractor agrees to pay" a specified sum; that partial payments will be made to the subcontractor each month "equal to 90 percent of the value of work and materials incorporated in the construction and/or materials delivered to the site of the work by the Subcontractor * * * but such partial payments shall not become due to the Subcontractor until 10 days after the Contractor receives payments for such work and materials from the Owner. Upon complete performance of this Subcontract by the Subcontractor and final approval and acceptance of Subcontractor's work and materials in accordance with the Contract Documents the Contractor will make final payment to the Subcontractor of the balance due to him under this Subcontract within 30 days after full payment for such work and materials has been received by the Contractor from the Owner. No partial payment to the Subcontractor shall operate as approval and acceptance of work done or materials furnished under this Subcontract."

The provisions of Section 3 of the subcontract relied on by defendants include the following: "The Contractor may at any time by written order of the Agents' authorized representative, * * * make changes in, additions to and omissions from the work to be performed and materials to be furnished under this Subcontract, and the Subcontractor shall promptly proceed with the performance of this Subcontract as so changed. Any increase or decrease in the Subcontract price resulting from such changes shall be agreed upon in writing by the parties hereto. * * * Should the Agents, during the life of this contract, require the Subcontractor to perform any additional work at the building upon the basis of the cost of labor and materials, the

Subcontractor agrees to and shall execute such extra work, upon receipt of written order therefor and the Contractor will pay the Subcontractor therefor" according to a schedule therein set out. "In the event that the Subcontractor performs any additional work upon the basis of labor and materials as hereinbefore set forth, it agrees to and shall furnish each day to the representatives of the Agents" certain payroll and cost records.

Section 7 provided that "Whenever it may be useful or necessary to the Agents to do so, the Agents shall be permitted to occupy and/or use any portion of the work which has been either partially or fully completed by the Subcontractor before final inspection and acceptance thereof by the Agents and in accordance with the Contract Documents, but such use and/or occupation shall not relieve the Subcontractor of his guarantee of said work and materials nor of his obligation to make good at his own expense any defect in materials and workmanship which may occur or develop prior to Contractor's and Agents' release from responsibility under the Contract Documents. Provided, however, the Subcontractor shall not be responsible for any damage thereto that is due to or caused by the negligence of the Contractor or Agents during such period of use."

Section 8 provided that it was understood and agreed that the work provided for in this subcontract constitutes only a part of the work being performed for the Owner, and that "The Subcontractor, therefore, agrees to perform the work called for in the agreement in such manner that he will not injure or damage any other work performed by the Contractor, Agents or any other subcontractor, and further agrees to pay the Contractor or Agents for any damage that may be caused to such other work by the Subcontractor or by his Agents or employees."

■ Although this is an action for negligence, the determinative issue as to the correctness of entering summary judgment for defendants requires the construction of the terms of the contract documents. It was said in Cure v. City of Jefferson, supra, at p. 310, that "A motion for summary judgment, premised upon an interpretation considering only the words of the contract, may be a proper procedure in the case of a contract, the meaning of which is so apparent that it may be gleaned from the four corners of the instrument itself. * * * However, the proper discharge of the judicial function in a case in which the parties to an agreement disagree as to its meaning and effect ordinarily requires something further than a mere examination and consideration of words employed in the written contract."

In this case plaintiff has alleged that after it installed electrical material, negligent acts of defendants required that it install them a second time. Absent the contract provisions it is clear that plaintiff would have a cause of action for that negligence. But do the contract provisions, as a matter of law, prevent recovery by plaintiff for the alleged negligence?

Defendants place reliance on several provisions of the Contract Documents, particularly paragraph 17 of Instrument A–1 that "title of all materials for which Owner is required to pay and of all work either completed or in the course of construction shall be in the owner;" the provision in the subcontract that the Agents could occupy and use any portion of the work, either partially or fully completed, before final inspection and approval thereof; and the provision that plaintiff shall not be responsible for any damage thereto, that is, damage to the "portion of the work," due to or caused by the negligence of the Contractor or Agents during such period of use. Also, it is apparently defendants' contention that if material installed by plaintiff was negligently damaged by them, plaintiff would be entitled to payment therefor even though it had not been inspected and approved. This result is not clear from the terms of the Contract Documents. At least it is argu-

able, and it cannot be said that such an interpretation notwithstanding custom and usage is compelled by the language used. Acceptable performance entitling plaintiff to full payment is conditioned on "final approval and acceptance of Subcontractor's work and materials." It also appears that defendants contend that if plaintiff found it necessary to install certain material a second time in order to obtain "final approval and acceptance" that this constituted "changes in" or "additions to" the work to be performed and materials furnished pursuant to the subcontract. We cannot agree that this construction is compelled. "Changes" and "additions" imply, or at least it could be argued that they imply, something other than replacing the material negligently damaged in order to obtain final approval and acceptance and fully perform the contract. As to the provision pertaining to title, it is provided that title of property "for which the Owner is required to pay" is in Owner, but full payment apparently is not required until there has been "final approval and acceptance." These provisions are subject to interpretation depending upon custom, usage, the interpretation of the parties, and possibly other matters.

■■ We do not find that the contract documents are so clear and unequivocal in their meaning that they necessarily, as a matter of law, preclude plaintiff's cause of action for damages for negligence. We express no opinion on the proper interpretation of the contract documents as applied to plaintiff's claim. That question "should be resolved only upon an interpretation of the contract in the light of the surrounding circumstances, applicable customs and usages, the parties' own interpretation of the contract and other evidence bearing on the question of its meaning." Cure v. City of Jefferson, supra. We are of the opinion, however, that the motion for summary judgment in the case did not demonstrate that defendants were, as a matter of law, entitled to judgment.

The judgment is reversed and the cause remanded.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.