**WELDON, WILLIAMS & LICK, INC., a corporation, Respondent,**

v.

**L. B. POULTRY COMPANY, a corporation, Appellant.**

No. 36351.

Missouri Court of Appeals, St. Louis District, Division One.

June 1, 1976.

Buerkle, Buerkle & Lowes, Jackson, for appellant.

Vogel & Frye, Cape Girardeau, for respondent.

RENDLEN, Judge.

Defendant, appealing an order granting summary judgment in plaintiff's action on account, urges as error: (1) summary judgment was improvidently ordered since genuine issues of material fact appear; (2) defendant was denied a full opportunity to depose plaintiff's officers in Missouri; and (3) plaintiff's petition failed to allege compliance with § 351.635, RSMo 1969, V.A. M.S., a prerequisite to suits by nonresident corporations in Missouri courts. For reasons we shall discuss, the judgment is reversed and cause remanded.

Plaintiff, a printing concern, alleged that defendant *ordered 1,033,000* printed paper wing tags in April, 1971, for use in defendant's poultry business, 200,000 of which plaintiff delivered in June of that year. Defendant paid for those delivered but refused to accept or pay for the balance.

Defendant's motion to dismiss, asserting as fatal plaintiff's failure to allege it was either a domestic corporation or a foreign corporation qualified to do business in Missouri, was denied.[1] By its answer defendant denied most allegations of plaintiff's petition and affirmatively averred: (1) that defendant paid for tags received "though the very last tags were inadequate"; (2) that it contracted to pay only for suitable merchandise actually received; (3) when made aware of defects, defendant notified plaintiff "it did not want any more tags"; and (4) by industry custom printers often maintain a supply of printed material on hand for future orders without charge until delivery.

■ Both parties deposed representatives of the other[2] and defendant served interrogatories which plaintiff answered in due course. Plaintiff moved, with supporting affidavits, for summary judgment and defendant responded, filing counter-affidavits. The case was taken from its trial setting and seven months later summary judgment was entered.

■ Summary judgment is "an extreme and drastic remedy and great care should be exercised in utilizing the procedure." *Cooper v. Finke*, 376 S.W.2d 225, 229[3] (Mo.1964). It is proper only where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

1. Answering defendant's interrogatories, plaintiff admitted it was an Arkansas corporation and had made no application for authority to do business in Missouri.

2. Defendant produced its secretary-treasurer and plaintiff produced salesman, Archie Smith, for deposition. Thereafter, defendant sought to depose an *officer* of plaintiff-corporation and the court ordered the deposition of "one officer or employee of plaintiff" but conditioned its order on defendant's filing a counter-affidavit supportive of allegations in its pleadings. The court was without authority to impose such condition. As stated in *State v. Goodman*, 406 S.W.2d 121, 126[7] (Mo.App.1966): "Insofar as depositions are concerned, it seems clear a trial court may make a protective order under Rule 57.01(c) [now 56.01(c)] only after notice to take a deposition has been served, *only after a motion for a protective order has been seasonably made, and only after movant shows a good cause for protection.* . . ." (Emphasis added.) For reasons not apparent from the record, no officer of plaintiff was deposed. On remand proper opportunity for further discovery must not be denied.

any material fact and that any party is entitled to judgment as a matter of law." Civil Rule 74.04(c), V.A.M.R. As provided in subsection (h) of the Rule: "In no case shall a summary judgment be rendered . . . unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law."

Reviewing the record, we learn defendant by letter of March, 1971, requested that plaintiff develop a new wing tag and in the following weeks plaintiff submitted a basic design for the tag which was altered somewhat to meet defendant's suggestions. On April 15 plaintiff submitted a revised version of the tag and on the 18th of April defendant returned the "proof" with the following note:

> "Tag looks good. I believe we can leave off the L. B. Poultry inside the state, leaving only Jackson, Mo. Get approveable [sic] and *print 1,000,000 and ship* as soon as possible." (Emphasis added.)

On April 20 the revised design was sent to the United States Department of Agriculture for its consideration since without that agency's approval the tags could not be used.

By phone on May 17, defendant ordered shipment of 200,000 tags which were delivered and payment made. About September 10 of that year, defendant informed plaintiff by phone that it would be unable to use any more of the tags. In the deposition of defendant's secretary it appears the tags were no longer suitable because defendant had fired its government "grader" and could no longer use tags designating its poultry "USDA Grade A."

Plaintiff then billed defendant for 833,-000 tags and when defendant denied it was bound to pay for additional tags, plaintiff destroyed the balance on hand.

■ Plaintiff suggests that the note of April 18, 1971, from defendant "constituted the contract, the entire contract, and the only contract." We cannot agree. Even if true, as plaintiff contends in its brief, that "[i]t is not disputed that upon receipt of this order that the 1,000,000 tags were printed,"

plaintiff's conduct was not consistent with its interpretation of the agreement.

The memo states "print 1,000,000 [tags] and ship as soon as possible." For reasons not explained, plaintiff printed 1,033,000 and by its invoice billed for the extra 33,-000. Further, plaintiff shipped only 200,000 tags, not the 1,000,000 "contracted" in the memo. Though this may be explained by the fact that defendant requested shipment of only 200,000 tags, the 1,033,000 printed cannot on its face be reconciled with the 1,000,000 ordered. These discrepancies indicate that reference to that document alone is insufficient to explain the terms of the agreement in light of the parties' subsequent actions and the allegations of plaintiff's petition.

Under these facts an interpretation of the contract must be made in light of the surrounding circumstances, applicable customs and usages, the parties' own interpretation of the contract, and other evidence bearing on its meaning. *Cure v. City of Jefferson*, 380 S.W.2d 305, 311[3] (Mo.1964); *E. O. Dorsch Electric Co. v. Plaza Construction Co.*, 413 S.W.2d 167, 173[8] (Mo.1967).

■ The trial court in the first instance, and this court upon review, must examine the record in the light most favorable to the party against whom summary judgment is rendered. *Cooper v. Finke, supra* at 228[2]. All reasonable doubts touching the existence of any material fact must be resolved against the movant, and the party moved against is entitled to all inferences that may reasonably be drawn from the evidence. *Maddock v. Lewis*, 386 S.W.2d 406, 409 (Mo.1965), cert. denied, 381 U.S. 929, 85 S.Ct. 1569, 14 L.Ed.2d 688 (1965).

■ Defendant alleged that under the agreement it was only bound to pay for merchandise received and it was the industry custom for printers to keep goods on hand to fill future orders but to charge only on delivery. Plaintiff's salesman, when deposed, testified to the contrary and his testimony is reinforced by the affidavits filed in support of plaintiff's motion. Nevertheless, defendant's counter-affidavits, though

somewhat vague, are sufficient to raise genuine issues of material facts on these points. Plaintiff would have us disbelieve defendant's counter-affidavits and select portions of depositions given by defendant's secretary as admissions binding the company. Instead defendant must have the benefit of every reasonable doubt and it remains for the trier of fact to weigh the evidence and measure credibility. The purpose of summary judgment "is not to deny litigants a trial where a bona fide dispute of material fact exists . . ." *Brown v. Prudential Ins. Co. of America*, 375 S.W.2d 623, 629[4] (Mo.App.1964). Among others there remain unresolved as issues of fact the terms of the contract between the parties and the existence or nonexistence of the custom or usage of trade which might explain the terms of that agreement. The proof here leaves room for controversy; for this reason the cause must be reversed and remanded.

Defendant next contends that plaintiff's unadorned allegation that it "is a corporation engaged in the printing business" is insufficient to demonstrate plaintiff's right to sue in Missouri courts. "It is generally the practice, when a corporation brings a suit, to state as an ultimate fact its corporate character and its right to sue in that form." *State v. Jones*, 320 Mo. 353, 8 S.W.2d 66, 67[5] (1928). However, it has been held that a corporate plaintiff's allegation of its corporate existence with nothing to show compliance "with the laws of this state to entitle it to make contracts and enforce them in courts of this state" was sufficient because "compliance with the laws of this state will be presumed and failure to comply is purely a matter of defense." *Scientific American Club v. Horchitz*, 128 Mo.App. 575, 106 S.W. 1117, 1118 (1907). See § 509.140, RSMo 1969, V.A.M.S., and Rule 55.13, V.A.M.R., (formerly 55.15). The contention is without merit.

Defendant finally asserts it was denied a reasonable opportunity to develop through deposition of plaintiff's corporate officers proof of plaintiff's nonentitlement to sue in the courts of this state. Review-

ing defendant's efforts to depose plaintiff's corporate officers, it is well to point out that defendant on remand of the case may avail itself of current discovery procedures and it should be noted "attendance of a party is compelled by notice." Rule 57.-03(a), V.A.M.R. An appropriate officer of plaintiff, perhaps more than one, may be deposed in Missouri subject to the court's general superintending control, properly exercised. Reversed and remanded.

WEIER, P. J., and DOWD, J., concur.