**Donald L. SCHELLE and Arevia M. Schelle, Plaintiffs-Appellants,**

v.

**MERCANTILE BANCORPORATION, INC., et al., Defendants-Respondents.**

No. 52347.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 20, 1987.

Motion for Rehearing and/or Transfer Denied Nov. 24, 1987.

Application to Transfer Denied Jan. 20, 1988.

Gena J. Trueblood, Columbia, for plaintiffs-appellants.

Thompson & Mitchell, Mary M. Bonacorsi, St. Louis, for defendants-respondents.

SIMON, Judge.

Plaintiffs, Donald L. Schelle and Arevia M. Schelle, appeal from a summary judgment on Counts I and II of their three count first amended petition. Count I sets forth a claim based on breach of contract and Count II seeks damages for conversion. Summary judgment was entered by the Circuit Court of Shelby County in favor of defendants: Mercantile Bancorporation, Inc. (hereinafter "Mercantile"); Mercantile Bank of Macon (hereinafter "MBM"); Mercantile Trust Company, N.A. (hereinafter "MTC"); and Sangamon Investment Company (hereinafter "Sangamon") and the judgment was designated final for the purpose of appeal. Count III for injunctive relief was continued indefinitely.

In their petition, plaintiffs in summary allege that by a contract dated December 14, 1982, MBM promised to "release its security interest in collateral described in the security Agreement" that included "all sheds, buildings, storage facilities, fixtures, fittings, appliances, apparatus, equipment, machinery, furniture, and furnishings and all other personal property which the plaintiffs owned which was located on the farm property subject to the deed of trust" dated July 2, 1982, in exchange for certain promises made by plaintiffs. Further, plaintiffs allege that the other defendants conspired in various ways to deprive plaintiffs of their interest in the foregoing collateral. Plaintiffs allege that they have attempted to obtain the collateral but have been prevented from doing so by defendants. Defendants deny that the December 14, 1982 release extended to the collateral as alleged by plaintiffs. However, in their appeal brief, defendants admit that they promised to release, and have, in fact, released their security interest in certain specified collateral.

In its judgment and order the trial court found, "as a matter of law that the Agreement of December 14, 1982 is not ambiguous; that the Security Agreement of May 1, 1981 did not create a security interest in the buildings and fixtures in controversy; that the buildings and fixtures in controversy were part of the mortgaged property covered by the Mercantile Deed of Trust of July 2, 1982, which Deed of Trust continued in force beyond December 14, 1982."

The record before us on appeal consists of the following: the contract, dated December 14, 1982, between plaintiffs and defendant MBM, that provides "[MBM] shall, upon closing, release its security interest in the collateral described in the Security Agreement;" a May 1, 1981 security agreement between plaintiffs and MBM; a "deed of trust and security agreement" dated July 2, 1982 and other deeds of trust; the pleadings and motions; volumes of depositions with attendant exhibits; a transcript of the pretrial conference during which defendants' motion for summary judgment was made and granted; and, a transcript of a conference held on plaintiffs' "motion for rehearing or for new trial or to amend the judgment."

Initially, we are confronted with the task of determining the evidentiary materials actually before the trial court when it granted defendant's motion for summary judgment. We have been supplied with an overwhelming amount of evidentiary material on appeal, but whether all of it was actually before the trial court does not appear from the record. The motion for

summary judgment was made during the pretrial conference on the day of trial. The record does not indicate that the trial court had time to review all the material that has been presented to us on appeal. The pretrial conference began at 8:20 a.m. Defendants' motion was made shortly thereafter. Two recesses were had during the argument thereon, and the summary judgment was granted by 10:20 a.m.

It is clear, and the record reveals, that the December 14, 1982 contract, the July 2, 1982 "deed of trust and security agreement," and the security agreement dated May 1, 1981, were before the trial court and were considered in the ruling on the motion. Likewise, it appears of record that the pleadings and motions were before the court. However, whether the numerous depositions and attendant exhibits were actually before the court is uncertain.

In *Hill v. Air Shields, Inc.*, 721 S.W.2d 112 (Mo.App.1986), we were confronted with a similar situation. We explained:

The purpose of the trial court's examination of proffered material extraneous to the petition is not to try an issue but to determine whether there is a genuine issue of material fact for trial. Here, it is unclear from the record before us what precisely was before the court. Defendant refers to depositions and to previous trial testimony, but whether these transcripts were actually before the court is not evident. It is not the function of the appellate court to shift through material furnished by the parties on appeal to determine the exact nature of the evidentiary material submitted to the trial court in a summary judgment proceeding. The preferable course for both the moving and opposing parties to follow in a motion for summary judgment would be to enumerate all portions of the transcripts and depositions referred to in the motion and to properly authenticate or certify the documents which they wish the trial court to consider in ruling on the motion. Unless the record reveals that the documents which the parties purportedly relied upon in the trial court were properly made part of the record, we cannot say that

they were before the trial court and they are not now before us.

*Id.* at 116.

Nevertheless, defendants assert that during the argument on the motion, "both sides made numerous references to the testimony contained in the depositions." It is well established, however, that unsworn statements made by counsel during an argument on a motion are not proof of the facts asserted therein. *See Flanigan v. City of Springfield*, 360 S.W.2d 700, 705–06 (Mo.1962). Nothing in defendants' answer, their unverified motion for summary judgment, or memorandum in support of said motion refers to any deposition testimony. Hence, we cannot say that the depositions were actually before the trial court when it ruled on defendants' motion and are now before us.

We look exclusively to the pleadings, motions, naturally the trial transcripts, the July 2, 1982 "deed of trust and security agreement" and other deeds of trust, the contract of December 14, 1982, and the security agreement dated May 1, 1981, as the record on appeal. For defendants to prevail as the parties moving for summary judgment, they have the burden to establish that there is no issue as to any material fact and that they are entitled to judgment as a matter of law. Rule 74.04(c); *E.O. Dorsch Electric Co. v. Plaza Construction Co.*, 413 S.W.2d 167, 169 (Mo. 1967). Moreover, defendants, as the moving parties, are not entitled to the benefit of favorable inferences to be drawn from the documents supporting their motion. Instead, the matters presented in connection with the motion must be construed most favorably to the party opposing the motion. *Weldon, Williams & Lick, Inc. v. L.B. Poultry Co.*, 537 S.W.2d 868, 871 (Mo. App.1976). The party opposing the motion is to be given the benefit of all reasonable inferences in determining whether a genuine issue of fact exists.

We now turn to the record and examine what was actually before the trial court. On July 2, 1982, plaintiffs executed a "Deed of Trust and Security Agreement,"

with a revolving credit agreement and a promissory note, to secure future advances from MBM, up to a total principal amount of $1,200,000. The revolving credit agreement has apparently not been included in the record.

The recital contained in the "deed of trust and security agreement" provides that the promissory note is "secured by a certain Security Agreement dated May 1, 1981," in addition to the deed of trust. The recital further states that reference is made to the May 1, 1981 security agreement, "for a description of the security and a statement of the terms and conditions upon which this Note is secured." The "deed of trust and security agreement" further provides that, in order to secure the payment of the note, plaintiffs convey, in trust, "the following described real estate, chattels real, personal property and other properties," including among other things: (1) six parcels of real estate situated in Macon County, Missouri. Said parcels are described solely in terms of metes and bounds. Parcel Number Six is a description of the real estate upon which plaintiffs' Macon County, Missouri residence is located; (2) "All buildings, improvements and structures at any time, now or here after, erected, situated or placed thereon;" and (3) "all fixtures, fixed assets, and personalty now or at any time hereafter annexed, affixed or attached to said real estate and/or buildings, improvements or structures thereon and all other personal property ... used or intended to be used in the possession, occupation or enjoyment thereof, and all replacements, additions or substitutions thereof or thereto, including ... all apparatus, appliances, machinery, equipment, and articles used to supply or provide, or in connection with, heat, gas, air conditioning, plumbing, water, lighting, power, elevator, sewerage, refrigeration, cooling, ventilation and sprinkler systems, water heaters, all window shades, drapes and drapery equipment and apparatus, all furniture, all grounds maintenance equipment, all maintenance supplies and all rugs and carpeting."

In addition to the foregoing, the "deed of trust and security agreement" specifies that:

This instrument is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the mortgaged property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and [Plaintiffs] hereby grant [MBM] a security interest in said items.

The instrument also provides that in the event of default, MBM "shall have the remedies of a secured party under the Uniform Commercial Code."

It is undisputed that the Equitable Life Assurance Company (Equitable) has first liens, by deeds of trust, on two of the parcels of real estate covered by the July 2, 1982 "deed of trust and security agreement" in favor of MBM. It is also undisputed that Equitable's liens cover some of the collateral in dispute here. However, this is a matter of priority and is not involved here.

On December 14, 1982, plaintiffs and MBM entered into the contract in dispute relating to the loan that plaintiffs had procured from MBM. Plaintiffs were then in default. By the contract, plaintiffs promised: (1) to cooperate fully with MBM in the foreclosure of its deed of trust on plaintiffs' 1,930 acre grain and hog farm; (2) to pay MBM $175,000 prior to the foreclosure; (3) to waive their equity of redemption; (4) to refrain from instituting any proceedings in bankruptcy; and (5) to do or to refrain from doing certain other acts. Plaintiffs allege that they have complied with the contract. In exchange for plaintiffs' promises, MBM agreed to: (1) "release its security interest in the collateral described in the Security Agreement;" (2) release plaintiffs' residence in Macon, Missouri from the lien of its deed of trust, and, (3) take or refrain from taking certain other actions.

Prior to the execution of either the December 14, 1982 contract, or the July 2, 1982 "deed of trust and security agreement," plaintiffs and MBM had executed a security agreement. This security agree-

ment, entered into on May 1, 1981, and referred to specifically by the July 2, 1982 "deed of trust and security agreement," set forth a description of collateral to be covered thereby, to-wit:

1. *Description of Collateral.* The property covered by this Security Agreement (hereinafter collectively referred to as the "Collateral") is described as follows:

A. All equipment, machinery, furniture, tools, furnishings, vehicles, and any and all other tangible personal property, and all additions, accessions and substitutions thereto or therefor now owned or hereafter acquired by the Borrower (hereinafter collectively referred to as "Equipment"), and

B. All accounts receivable, contract rights, chattel paper, documents, instruments, general intangibles, and other forms of obligation and other rights to the payment of money, now owned or which may hereafter be created by Borrower, (hereinafter called "Accounts"), and

C. All of Borrower's existing and future inventory, including all growing and all harvested crops, all livestock and all other farm products, and any documents of title representing any thereof (hereinafter called "Inventory"), and

D. *All sheds, buildings, storage facilities, fixtures, fittings, appliances, apparatus, equipment, machinery, furniture and furnishings, and all other personal property now owned or hereafter acquired now or at any time hereafter annexed, affixed or attached to the real property described in Exhibit "A" hereto and made a part hereof,* and

E. All proceeds, including insurance proceeds, and products of (A), (B), (C) and (D), above.

(emphasis added).

■ Whether or not the December 14, 1982 contract requires MBM to release its security interest in the disputed collateral obviously requires a construction of the contract in the first instance. Of course, the construction of a contract is ordinarily a matter of law. *National Merchandising*

*Corporation v. McAlpin,* 440 S.W.2d 489, 493 (Mo.App.1969). Thus, a summary judgment is appropriate in contract cases when the meaning of the portion of the contract in issue is so apparent that it may be determined from the four corners of the contract. *E.O. Dorsch Electric Co.,* 413 S.W.2d at 172.

> However, where the language of the [contract] is ambiguous, the propriety of a summary judgment is questionable. *National Merchandising Corp. v. McAlpin,* 440 S.W.2d 489, 494 (Mo.App.1969). In these instances, the [parties'] intent must be established by extrinsic evidence, *see, e.g., Cure v. City of Jefferson,* 380 S.W.2d 305, 311 (Mo.1964) and, in a summary judgment proceeding, extrinsic evidence rarely provides the unassailable proof essential to resolve the factual issue of intent. Rule 74.04(h); *See National Merchandising Corp. v. McAlpin, supra,* at 494.

*Cooper v. Anschutz Uranium Corp.,* 625 S.W.2d 165, 167 (Mo.App.1981).

■ The contract language in issue here, embodied in the December 14, 1982 contract, poses the question of what the parties intended when they agreed that MBM shall "release its security interest in the collateral described in the security agreement." The provision is not explained within the four corners of the contract, nor does the evidentiary material in the record before this court provide a definitive meaning. Indeed, the December 14th contract does not even specify which security agreement is referred to; the one of May 1, 1981 or the one embodied in the July 2, 1982 deed of trust and security agreement. Thus, the issue is: Did the parties intend by the phrase "release its security interest in the collateral described in the security agreement" to release the disputed collateral as plaintiffs allege, or did they intend the language to operate more narrowly to the exclusion of such collateral as defendants contend. Nothing contained in the record before us resolves this question.

A simple reading of the December 14, 1982 contract, and the May 1, 1981 security agreement, would seem to support plain-

tiffs' allegations. The December 14th agreement states that MBM shall "release its security interest *in the collateral described* in the security agreement." (emphasis added). The type of collateral is in no manner qualified or limited. The *"collateral described* in the [May 1, 1981] security agreement" includes "[a]ll sheds, buildings, storage facilities, fixtures, fittings, appliances, apparatus, equipment, machinery, furniture and furnishings, and all other personal property." This description of collateral appears to be broad enough to cover the disputed collateral as alleged by plaintiffs.

Defendants argue that reading the December 14th contract as a whole, renders the agreement unambiguous and clearly shows that the collateral in dispute was not released. This argument is not completely without merit, but we cannot conclude that the ambiguity is resolved.

Of course, in trying to ascertain the intended meaning of the disputed language of the December 14th contract, we are guided by the principle that "[a] contract must be interpreted from the intent gathered from all the language employed within its four corners." *Sears v. Carter*, 224 Mo.App. 726, 24 S.W.2d 717, 720 (1930). "A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together." Restatement (Second) Contracts § 202(2) (1981).

Defendants point to paragraphs one, nine, twelve and thirteen of the December 14, 1982 contract to demonstrate that the collateral in dispute was not intended to be released by MBM. Those paragraphs provide:

1. *Foreclosure.* [MBM] shall immediately begin foreclosure proceedings under the [July 2, 1982] Deed of Trust upon all the parcels of real estate described therein with the exception of Parcel 6, the Schelles' Macon, Missouri residence.

9. *Macon Residence.* Mercantile shall release its Deed of Trust recorded in Book 468 at page 354, Record of Macon County, Missouri, with regard to Parcel 6, the [plaintiffs'] Macon residence, fifteen (15) days after the issuance of a Trustee's Deed following foreclosure as provided by paragraph 1 herein, or by April 1, 1983, whichever shall first occur.

12. *Storage of Grain.* The [plaintiffs] have approximately 45,000 bushels of soy beans stored in bins situated on the real property described in the Deed of Trust. [MBM] agrees that in the event of foreclosure and purchase of said property by Mercantile that the [plaintiffs] may continue to store said grain until March 1, 1983, at which time [plaintiffs] and [MBM] shall enter into a license agreement whereby [plaintiffs] shall pay [MBM] $.02 per bushel per month of grain stored; provided, that of the three (3) Butler Storage Bins, [plaintiffs] shall vacate said three (3) bins as follows: the south bin shall be vacated on or before April 1, 1983; the middle bin shall be vacated on or before May 1, 1983, and the north bin shall be vacated on or before June 1, 1983, said rent to be paid on the first of each month beginning April 1, 1983. Rents shall be prorated as of date of removal of beans.

13. *Indemnification of Mercantile.* [Plaintiffs] shall remove all collateral, other than grain as hereinabove provided, on or before March 1, 1983. [Plaintiffs] shall hold [MBM] harmless from any liability for loss or damage to said collateral, including grain stored on said premises.

Defendants posit that it is undisputed, that under the "deed of trust and security agreement," the deed of trust created a lien on the collateral at issue. Defendants note that paragraph 1 of the December 14, 1982 contract expressly provides that MBM shall foreclose its deed of trust "upon all parcels of real estate ... with the exception of parcel 6, the [plaintiffs'] Macon, Missouri residence." Defendants also note that paragraph 9 specifically releases the Macon residence from the lien of the deed of trust. It is argued, therefore, under the maxim *expressio unius est exclusio alterius* (expression of one thing is the exclusion of another), that since the Macon residence is expressly released from the deed of trust

and the disputed collateral is not, "the inescapable conclusion is that the parties did not intend to release the [collateral in dispute] from the deed of trust." *See Rollins v. Schwyhart,* 587 S.W.2d 364, 366 (Mo. App.1979).

Defendants' argument, however, misses the mark. Plaintiffs vigorously dispute that the deed of trust created a lien on disputed collateral. Plaintiffs have consistently maintained that the disputed collateral is covered by the Security Agreement dated May 1, 1981 and, as such, was released by MBM.

Nevertheless, defendants point to paragraphs 12 and 13 of the December 14, 1982 contract. Defendants point out that paragraph 13 requires plaintiffs to remove all collateral, other than grain released by MBM, on or before March 1, 1983. And yet, defendants note, paragraph 12 allows plaintiffs to store soybeans in grain bins "situated on the real property described in the deed of trust" after March 1, 1983. These bins are part of the collateral in dispute. After March 1, 1983, the plaintiffs and MBM "shall enter into a license agreement whereby [plaintiffs] shall pay [MBM] $.02 per bushel per month of grain stored." Paragraph 12 further provides that plaintiffs "shall vacate" three of the bins by certain dates and that "[r]ents shall be prorated as of the date of the removal of beans." According to defendants, the foregoing clearly demonstrates that these bins were not released by MBM and, therefore, neither was any of the other disputed collateral.

In reading paragraphs 12 and 13, it is clear that the grain is excepted from the requirement that all collateral be removed prior to March 1, 1983. However, allowing the grain to remain after March 1, 1983 necessarily implies that the bins would remain, but paragraphs 12 and 13 do not, unambiguously, provide that the security interest in the bins and other collateral have not been released. The license agreement could reasonably apply to the land on which the bins sit or to the bins or to the land and the bins. Thus, the language is unclear.

Nevertheless, defendants argue that plaintiffs conceded at the argument on the motion for summary judgment that the disputed collateral was, as of May 1, 1981, considered part of the real estate. Citing § 400.9–104(j), RSMo (1986) of the Missouri Uniform Commercial Code, defendants maintain that there can be no security interest in real estate. Therefore, according to defendants, the Security Agreement of May 1, 1981 did not create a security interest in the disputed collateral. And, because no security interest was created therein, no security interest could be released.

Counsel for plaintiffs, however, did not concede that the disputed collateral was real estate. Plaintiffs' counsel only stipulated that the disputed collateral was "physically attached" to the real estate, as evidenced by the following soliloquy of plaintiffs' counsel.

Judge, we want to be sure that the record is correct, as we understand it, with reference to our position. In view of the Court's indication that you are prepared to enter a Summary Judgment with reference to these particular assets, I want to be sure and—perhaps we should stipulate certain facts for this purpose.

In the first place, we do not in anyway agree that the hog buildings, grain bins, houses, feed bins, apparatus, and barns or brick or fences, from a legal sense, are attached to the real estate. I want to be sure that we're not stipulating and agreeing. In fact, it's our position, from a legal point of view, they're not attached.

We will; however, stipulate for the record, which I think I already did, but I want to make sure. Physically, the hog buildings, the grain bins, the houses, the feed bins, the fencing, the tool shed are all in some manner attached, physically attached, to the real estate. Either by nuts or bolts in connection with the grain bins and feed bins or by nails or by someway attached to the real estate. That, we would stipulate to.

I will also state that our position is that the agreement was entered into on December 14, 1982, and, in effect, severed those items and converted them to personal property and that we had the right to remove them from the premises at that time.

Plaintiff's admission that the collateral was "physically attached" to the real estate does not entitle defendants to a judgment as a matter of law. As noted, the trial court found as a matter of law that "the buildings and fixtures" in controversy were part of the real property covered by the "deed of trust and security agreement" and that the May 1, 1981 security agreement "did not create a security interest in the buildings and fixtures." In characterizing part of the disputed collateral as "fixtures," the court erred because "[w]hether an article is a fixture or not depends upon the facts and circumstances of the particular case." *Cottoor v. Wells*, 641 S.W.2d 492, 494 (Mo.App.1982) (quoting *Bastas v. McCurdy*, 266 S.W.2d 49, 51 (Mo.App. 1954)). Ordinarily, whether or not an article is a fixture is an issue of fact and is not resolvable as a matter of law. *Wisdom v. Rollins*, 664 S.W.2d 37, 39 (Mo.App.1984). Nothing in the record unambiguously demonstrates that the collateral in dispute is real or personal property.

Further, the contract merely states that MBM shall "release its security interest in collateral *described* in the security agreement." (emphasis added). It does not limit the security interests to those allowable under the Uniform Commercial Code. It appears only to be referring to the security agreement for a *description* of the collateral to be released. In the broad sense, a security interest is an interest in property of any form which secures payment or performance of an obligation. A security interest can be taken in real property, for example, by deed of trust with the trustee holding the property as security for the payment of a debt to the lender. *See* IV American Law of Property § 16.17 at 35–36 (1952). *See also* § 443.035, RSMo (1986). Likewise, a security interest may be taken in personalty or fixtures. *See* § 400.1–201(37), RSMo (1986). Moreover,

the language fails to indicate which security agreement it is directed. We believe it refers to the May 1, 1981 agreement but, then again, the language is not clear. The July 2, 1982 document, "deed of trust and security agreement," may also be the object of the language's direction.

For the foregoing reasons, we find that the December 14, 1982 contract language in issue is susceptible of differing interpretations, though we do not express any opinion as to its proper interpretation. We conclude that defendants failed to demonstrate, as a matter of law, that they were entitled to judgment and, therefore, summary judgment was not appropriate in this case. The judgment of the trial court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

GARY M. GAERTNER and STEPHAN, JJ., concur.