**Rufus NORMAN, Appellant,**

v.

**R. M. WILLIS, A. Phillip Randolph, Milton P. Webster (Deceased), Representing the Brotherhood of Sleeping Car Porters, a Labor Union, Respondents.**

No. 24334.

Kansas City Court of Appeals.

Missouri.

April 4, 1966.

Allan R. Browne, Ennis, Browne & Martin, Kansas City, for appellant.

Donald W. Fisher, Toledo, Ohio, Ernest Hubbell, Kansas City, Mulholland, Hickey & Lyman, Toledo, Ohio, of counsel, for respondents.

HOWARD, Judge.

This case comes to the writer on reassignment. It is a suit wherein plaintiff seeks compensatory and punitive damages for the wrongful refusal of the defendants, as officials of the Brotherhood of Sleeping Car Porters, to process his grievance under the provisions of a collective bargaining contract. The suit was commenced as a class action against the Union and R. M. Willis, local secretary of the Brotherhood of Sleeping Car Porters, Phillip Randolph, International President of that Union, and Milton P. Webster, First International Vice President. Plaintiff claimed that the defendants acted wilfully, wantonly, wrongfully and maliciously in refusing to continue to represent him and to process his grievance against his employer, the Pullman Company.

Defendants interposed a motion for summary judgment, which the trial court sustained, and entered judgment against plaintiff. The trial judge found that defendants processed plaintiff's grievance in good faith and that there was no genuine issue as to any material fact. Plaintiff appeals from such judgment.

■ In a case submitted on a motion for summary judgment, the burden is upon the party filing the motion (here the defendants) to show by unassailable evidence that there is no issue of fact remaining in the case and that the moving party is entitled to judgment as a matter of law. See Nelson v. Browning, Mo., 391 S.W.2d 873, Cure v. City of Jefferson, Mo., 380 S.W.2d 305, Oakley v. Duerbeck Co., Mo., 366 S.W.2d 430, and Cooper v. Finke, Mo., 376 S.W.2d 225. In this last cited case, it is said: "The appellate court as well as the trial court must view the record on summary judgment in the light most favorable to the party against whom the judgment is rendered". l. c. 228. The court also said, l. c. 229: "As its name indicates, a summary judgment is an extreme and drastic remedy and great care should be exercised in utilizing the procedure".

For our purposes the facts in this case may be quickly summarized. Plaintiff is a pullman car porter and president of the Kansas City local of the Brotherhood of Sleeping Car Porters. In August of 1959 plaintiff laid off work because of his health. He was suffering from arthritis of the spine and perhaps bursitis. Plaintiff's personal physician put him in the hospital for X-rays and laboratory tests and then reported that he would be able to go back to work at the end of "his vacation" on September 16, 1959. Such report was given to the employer, the Pullman Car Company, but the company refused to permit plaintiff to come to work at that time. Shortly, thereafter, the company doctor examined plaintiff and reported that he was physically unable to return to work. Plaintiff then went to another doctor of his own choice, who recommended extensive treatment, and at first stated it would probably be six months before plaintiff could return to work, although he might recover sufficiently to return in 90 days. However approximately 30 days thereafter and on November 16, 1959, this same doctor advised that plaintiff had recovered and could return to work. Also in November of 1959, plaintiff consulted Dr. Lichtor, a specialist in orthopedic surgery, who advised that plaintiff could return to work. All of the time after September 16, plaintiff was continuously trying to return to work; he was writing letters to the local supervisor of the employer, and was submitting various medical reports to such supervisor.

Plaintiff was not successful in his attempts to return to work and late in November, 1959, finally entrusted his grievance entirely to the Brotherhood of Pullman Car Porters, whom he asked to represent him in the grievance procedure with representatives of the company.

Mr. Milton P. Webster, First International Vice President of the Union, and one of the defendants herein, was the individual who handled this grievance in his position with the union. On an appeal provided for under the grievance procedure, the matter was submitted to a company official designated as an "Appeals Officer". This officer decided that plaintiff could return to work but denied his claim for back pay during the period from September 16, 1959, when he was not permitted to work by the employer. Plaintiff returned to work February 4, 1960. The next step in the grievance procedure, which now applied only to the claim for back pay, would be an appeal to the Railway Adjustment Board under the Railway Labor Act. The Union did not file such an appeal.

Plaintiff claims that it was necessary to file such an appeal within 60 days after the decision of the company officer; that Webster did not advise him that such an appeal would not be filed until after this 60 day period had expired; plaintiff claims that, as a consequence of this failure to notify,

he was prevented from filing his own appeal, and therefore lost his claim to back pay. The Union contends that there is no time limit on filing the appeal with the Railway Adjustment Board and that plaintiff could file his own appeal at any time (apparently even today). In support of their motion for summary judgment, the defendants filed a long affidavit by Mr. Webster, together with many exhibits consisting mostly of copies of correspondence and medical reports. The substance of this affidavit, as it bears on the issues here in question, is that Mr. Webster evaluated plaintiff's claim on the basis of the evidence before him and concluded from such evaluation that an appeal to the Railway Adjustment Board was not likely to be successful and therefore should not be filed. No appeal was in fact filed. The plaintiff filed a counter-affidavit in which he alleged that the decision not to file the appeal was not reached in good faith, but on the contrary, he alleged that such determination was made in bad faith and was the result of personal spite, ill will and hard feelings held against him by Webster and the other defendants. This affidavit of plaintiff was not denied or controverted.

■ Officers of a union have a right, and in fact, a duty, to sift and evaluate grievances of the union members; they must exercise discretion in determining which grievances to proceed with and which to refuse. It is obvious that the union officials can not process every grievance claimed by a member. See Sipes v. Vaca, Mo., 397 S.W.2d 658, Ford Motor Company v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048, Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370, and Ostrofsky v. United Steelworkers of America, D.C., 171 F.Supp. 782. These cases also point out that the discretion exercised by the union officials must be impartial and based on the facts and circumstances of each individual case and that a refusal to proceed with a grievance, not based on the facts, but based upon personal spite, ill will, fraud or other wrongful motives, is not justifiable but constitutes an abuse of discretion for which the union and its officials may be liable.

■ Even a determination that there was sufficient evidence before Webster to support and justify a good faith decision not to appeal, would not be enough to sustain the judgment below. The issue to be determined is the good faith or bad faith of the defendants in refusing to further process plaintiff's grievance. If the refusal to appeal was based on an impartial evaluation of the evidence in the case, then plaintiff can not recover. However, if the refusal was based on personal spite and ill will and was not reached as the result of a good faith evaluation of the evidence, then plaintiff may recover. This question requires the trier of fact to determine the factors which actuated the decision not to appeal. Since it appears that this decision was primarily Webster's decision, the finder of fact must, of necessity, determine Webster's state of mind; his motive. This determination must be made from a consideration of all the facts at Webster's disposal when he made his decision, plus all the other surrounding circumstances, including the history of animosity and ill will alleged to have existed between Webster and the other defendants, on the one hand, and the plaintiff on the other. From the very nature of this issue, it is most peculiarly suited for submission to a jury upon a complete presentation of the evidence. An opportunity for cross-examination is most important. A determination of this fact issue may well rest upon the credibility of the witnesses as they appear on the stand. It seems that such an issue would seldom be ripe for a decision by summary judgment and we can not agree, in this case, where one opposing affidavit states that the decision not to appeal was the result of a good faith, impartial evaluation of the evidence, and where the other affidavit (not answered or denied) asserts that the decision was the result of personal spite and ill will, that no fact issue is present. To say the least, it does not appear that the de-

fendants have shown by unassailable evidence that there is no fact issue here presented. We can not but believe that reasonable minds could well differ when the evidence is all in. We can say with certainty that reasonable minds could differ when considering only the affidavits before us.

We therefore conclude that an issue of fact was present and that the trial court erred in granting judgment on defendants' motion for summary judgment. The judgment of the trial court is therefore reversed and the cause remanded for trial.

CROSS, P. J., concurs.

BLAIR, J., not participating.