**Wayne E. BARKS, Plaintiff-Appellant,**

v.

**BI–STATE DEVELOPMENT AGENCY,**
**Defendant-Respondent.**

No. 52221.

Missouri Court of Appeals,
Eastern District,
Division Five.

April 7, 1987.

John J. Allan, St. Louis, for plaintiff-appellant.

Leo J. Bub, St. Louis, for defendant-respondent.

SIMEONE, Senior Judge.

Plaintiff-appellant, Wayne E. Barks, appeals from a judgment of the circuit court of the City of St. Louis granting defendant-respondent, Bi-State Development Agency's motion for summary judgment on appellant's alleged claim for damages for wrongful discharge for exercising his rights under the Missouri Workers' Compensation Law. We affirm.

Barks was an employee of Bi-State from June 23, 1977 through July, 1981. He was employed as "bus cleaner." He had earlier been a "bus mover." The duties of bus

cleaners included sweeping floors in the maintenance sheds and emptying barrels. He was a member of the Amalgamated Transit Union. On July 11, 1980, Barks, in the course of his employment, injured his back while emptying a trash barrel containing heavy steel parts. He consulted a physician and filed a Workers' Compensation claim. He was off work for some eight months during which he underwent surgery for a herniated disc. His Workers' Compensation claim was amicably settled on July 11, 1981.

On March 10, 1981 he reported for work. He had a statement from his physician, Dr. Andrew Luh, certifying that he was physically fit. Sometime thereafter Barks was examined by a physician retained by Bi-State, Dr. James Whittico, who also stated that Barks was capable of returning to work. However, Dr. Whittico subsequently believed that Barks was not fit to return to the job. In his deposition he stated that Barks was terminated for medical reasons. Barks was terminated by letter.

On July 14, 1981, while the collective bargaining "Memorandum of Agreement" was in effect, Barks telephoned Mr. Olen Hagebusch, the executive vice president of Division 788 of the Amalgamated Transit Union, and indicated his desire to file a grievance over the termination letter. He was told by Hagebusch that he could not file a grievance for a medical discharge, but could only file one for "insubordination"—and that only bus drivers were allowed to file a grievance. Hagebusch said "Wayne, you can't file a grievance. Only bus drivers can." Hagebusch also allegedly stated that "[i]f you come down here, I can't let you file a grievance." Barks never filed a grievance, although in his deposition he admitted he was aware that he had a right to do so. He also admitted that he was given a copy of the Union contract.

On November 9, 1982 Barks filed an amended petition for wrongful discharge. In December 1983, this petition was dismissed because he failed to exhaust his union remedies. On January 6, 1984, he filed an amended petition. In this petition he alleged that in July 1980, while an employee of the defendant and while in the scope of his employment he sustained a "back injury" and exercised his rights under the Workers' Compensation Law. He alleged that he recovered sufficiently to permit him to return to work and presented a physician's certificate to that effect, but defendant refused to allow him to return. He further alleged that on June 14, 1981 he was "wrongfully discharged" for "exercising his rights under the law contrary to section 287.780 R.S.Mo."[1] For the first time, in this amended petition he alleged that he was informed by Hagebusch that a "discharge for medical reasons" was not covered by any union grievance procedure and that Barks could not file a grievance under the contract. As a result of this alleged wrongful discharge, he prayed for damages and reinstatement to his job.

On August 5, 1986, Bi-State filed its motion for summary judgment pursuant to Rule 74.04, alleging that Barks (1) failed to exhaust his remedies under the grievance and arbitration provisions of the Collective Bargaining Agreement before bringing his action, and (2) failed to exhaust his internal union remedies regardless of whether he attempted to file a grievance or whether he was denied the right to file a grievance. The motion raised the threshold question of whether plaintiff was entitled to maintain this civil action for wrongful discharge. On August 26, 1986, the court sustained Bi-State's motion and dismissed the plaintiff's cause.

In Bark's deposition he admitted that he had filed three earlier grievances although he was not a bus driver at those times and that he knew and was aware that he had a right to file a grievance under the Union contract. As to one grievance, when Barks was a bus mover, he was discharged in 1978 because he caused damages of approximately $1,250 to a bus. He was later

---

**1.** "No employer or agent shall discharge or in any way discriminate against any employee for exercising any of the rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer."

reinstated with the help of the Union. He did not file a grievance in the case at bar because Hagebusch told "me it wouldn't do any good." Mr. Hagebusch's affidavit stated that "regardless of the merits of a particular grievance, a member of Division 788 does not need the permission of the Union to file a grievance against his employer."

Section 4 of the Collective Bargaining Contract provides in pertinent part that:

Any question relating to grievances or the interpretation of any provision of this Agreement arising between the Company and the Union or the employees which cannot be amicably adjusted by conferences, shall be submitted to arbitration as provided herein.

Section 28 provides:

... Any employee discharged, suspended, or otherwise disciplined may file a grievance in writing within five (5) days after such suspension, discharge, or disciplinary action.

On appeal, plaintiff contends that the trial court erred in granting summary judgment for Bi-State because there was a material issue of fact as to (1) whether the conduct of the Union and Mr. Hagebusch breached the union's duty of fair representation in the grievance procedure and (2) the futility of exhausting the grievance procedures which would waive the requirement of exhausting such procedures.

Summary judgment, pursuant to Rule 74.04, is the appropriate procedure where there are no genuine issues of material facts and the moving party is entitled to judgment as a matter of law. *Chapman v. Auto-Owners (Mut.) Ins. Co.,* 684 S.W.2d 335, 336 (Mo.App.1985); *Halford v. American Preferred Ins.,* 698 S.W.2d 40, 42 (Mo. App.1985). The record must be viewed in the light most favorable to the party against whom judgment is made. *Chapman, supra,* 684 S.W.2d at 336. There must be *genuine* and *material* issues of fact. The procedure is a salutary one. It separates the formal from what is genuine and substantial so that only the latter may subject a party to the burden and expense of a trial. Such a judgment may be ren-dered where the pleadings, depositions, and affidavits show no genuine issue of material fact. *Hurwitz v. Kohm,* 516 S.W.2d 33, 36 (Mo.App.1974).

Appellant did not file any written response to the respondent's motion for summary judgment nor counter-affidavits, contrary to proper procedure. When a motion for summary judgment is made, the adverse party may not rest upon the pleadings, but a response must set forth facts showing that there is a genuine issue for trial. If he does not respond summary judgment is proper. *Snowden v. Northwest Mo. State University,* 624 S.W.2d 161, 169 (Mo.App.1981); *Cherry v. City of Hayti Heights,* 563 S.W.2d 72, 75 (Mo. banc 1978); *Kroh Brothers Dev. Co. v. State Line Eighty-Nine, Inc.,* 506 S.W.2d 4, 12 (Mo.App.1974). In the absence of a response the facts are admitted. We could dispose of the cause on these grounds but we will examine the issues. *Hurwitz, supra,* 516 S.W.2d at 37.

The primary issues in this case are whether the collective bargaining agreement's grievance procedure covers plaintiff's allegations in his petition and whether, based on the record, the trial court properly granted summary judgment.

"A particular dispute must be processed through the grievance procedure 'unless it may be said with positive assurance that the arbitration clause is not susceptible to any interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' *Williams v. Clean Coverall Supply Co., Inc.,* 613 S.W.2d 659, 662 (Mo.App.1980) quoting *United Steel Workers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417–18 (1960)"; *Williams v. St. Joe Minerals Corp.,* 639 S.W.2d 192, 195 (Mo.App.1982) —granting summary judgment affirmed; see Annot., 72 A.L.R.2d 1439.

In *McKiness v. Western Union Telegraph Co.,* 667 S.W.2d 738 (Mo.App. 1984), this court held that an employee's claim that she was wrongfully discharged because she exercised her Worker's Com-

pensation rights was a dispute that fell within the collective bargaining agreement and her suit for discriminatory discharge was premature since she had failed to exhaust her remedies provided in the collective bargaining agreement before filing suit. In that case, this court sustained the trial court's order granting a motion to dismiss. We stated that:

> In the State of Missouri, where a collective bargaining agreement provides a grievance procedure for the settlement of disputes between the employer and the union or the employee, the party aggrieved must exhaust the remedies provided by the agreement before resorting to the courts for redress. *Williams v. St. Joe Minerals Corp.*, 639 S.W.2d 192, 195 (Mo.App.1982); *Williams v. Clean Coverall Supply Co., Inc.*, 613 S.W.2d 659, 661 (Mo.App.1980).

*McKiness, supra,* 667 S.W.2d at 741.

These principles have solid foundation. It has long been established that a union member is barred from maintaining an action unless the member has exhausted all grievance procedures and arbitration remedies. See *Republic Steel v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Neal v. System Board of Adjustment,* 348 F.2d 722 (8th Cir.1965); *Gomillia v. Missouri Pacific Railroad Co.,* 345 S.W.2d 202 (Mo.1961); *Williams v. Clean Coverall Supply Co., supra; Ware v. St. Louis Car Co.,* 384 S.W.2d 287 (Mo.App. 1964). It is also established that where a collective bargaining agreement provides a grievance procedure, the employee is "bound by terms of that agreement which govern the manner in which contractual rights may be enforced." *Vaca v. Sipes,* 386 U.S. 171, 184, 87 S.Ct. 903, 914, 17 L.Ed.2d 842, 854 (1967). The policy which underlies these federal and state authorities is to preserve industrial peace and stability and the integrity of the collective bargaining process.

Appellant contends, however, while under normal circumstances, the employee would be required to exhaust his remedies provided for in the collective bargaining agreement before filing an action, this action comes within the fair representation exception espoused in *Vaca v. Sipes, supra.* He contends in his brief that he was "discouraged" from filing a grievance, and that Hagebusch's conduct "is a controlling issue in this lawsuit." He contends, without citing any authority, that although the duty of fair representation grew out of federal legislation enabling suits for contract breach under the Railway Labor Act, the National Labor Relations Act and the Labor Management Relations Act, 1947, it is based on principles of fairness that are applicable to suits brought under state enabling statutes, such as Section 287.780 V.A.M.S. (1986 Supp.). He relies upon *Sipes v. Vaca,* 397 S.W.2d 658 (Mo. banc 1965) and *Norman v. Willis,* 402 S.W.2d 46 (Mo.App.1966).

In *Vaca v. Sipes, supra,* the United States Supreme Court, after examining a number of decisions in the labor relations field, held that (1) state courts have jurisdiction to hear a cause involving a union member where the union "arbitrarily, capriciously and without just cause" refuses to take a grievance to arbitration, (2) that federal, rather than state standards, govern and that under those standards the evidence failed to show that the union acted arbitrarily or in bad faith so as to have breached its duty of "fair representation." In the course of the opinion reversing *Sipes v. Vaca,* 397 S.W.2d 658 (Mo. banc 1965), the Supreme Court discussed the principle of "fair representation":

> ... Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. 386 U.S. at 177, 87 S.Ct. at 910, 17 L.Ed.2d at 850.

The Court noted that if a wrongfully discharged employee resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on that ground. The employee is bound by terms of that agreement which govern the manner in which contractual

rights may be enforced. For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration proceures established by the bargaining agreement.

The Court concluded that an employee may bring an action against his employer in the face of a defense based upon failure to exhaust contractual remedies, provided the employee can prove that the union has breached its duty of fair representation in its handling of the employee's grievance. Examples were given of unfair representation. One was when the employee had been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance, or its actions were arbitrary, discriminatory or made in bad faith. The Supreme Court concluded that plaintiff's evidence did not prove arbitrary or bad faith conduct on the part of the union in processing his grievance. Evidence showed the union diligently processed the grievance into the fourth step. *See also Motor Coach Employees v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971)—fraud, deceitful action or dishonest conduct required.

In *Norman v. Willis, supra,* the Western District held that summary judgment was improper where there was a genuine issue of fact as to the motive of the union when it refused to appeal a member's claim to the Railway Adjustment Board, and whether its refusal was made in good faith. If the refusal to appeal were based on an impartial evaluation of the evidence then plaintiff could not recover. If the refusal were based on personal spite and ill will then plaintiff may recover. This question required a factual determination inappropriate for summary judgment.

■ Under the standards set forth in the judicial authorities, summary judgment is proper under the circumstances here. In *Vaca,* the union refused to take the grievance to the arbitration, yet was not, under the evidence, guilty of any unfair representation because it had processed the grievance through several steps of the bargaining procedure. The Supreme Court clearly recognized that the employee must make

an "attempt" to exhaust the exclusive grievance procedures. In the case at bar, appellant has not even made the attempt. Unlike *Vaca,* the union here did not handle the appellant's grievance. Appellant knew of the collective bargaining agreement and its procedures. The Agreement authorizes an employee to file a grievance; he has a right to do so; he admitted he was aware that he had a right to file a claim, in fact he had filed three previous grievances; and he admitted that he had filed a grievance with the shop steward before. Barks acknowledged that he had been given a copy of the Union contract. No person prevented him from filing a grievance. *Cf. Norman v. Willis, supra.* Filing a grievance would not have been a wholly futile act. The affidavit of Mr. Hagebusch stated that appellant did not need the permission of the union to file a grievance. Even if the alleged statements of Hagebusch are true, they do not rise to the level of unfair representation. *Miller v. General Motors Corp.,* 513 F.Supp. 748, 752 (S.D.Ind.1981), *aff'd* 675 F.2d 146 (7th Cir.1982). Appellant had filed several grievances before without permission of the union and was aware that he had a right to do so. In order for the futility doctrine to apply the member must show that he was "justified, as a reasonable person, in believing that nothing further could be accomplished...." *United States v. Williams,* 420 F.2d 288, 291 (10th Cir.1970); *cf. Williams v. Clean Coverall Supply Co., Inc., supra,* 613 S.W.2d at 664. Tested by a reasonable standard, appellant could not have been so justified. The pursuit and exhaustion of the collective bargaining agreement remedies were not "demonstrably futile." *Cf., New York Petroleum Corporation v. Ashland Oil, Inc.,* 757 F.2d 288, 293 (Emer.Ct.App.1985).

■ Under all the facts—pleadings, depositions and affidavits—the order granting summary judgment was not error. There were no "genuine" or "material" issues of fact. Even though it has been said that a genuine issue of fact exists where there is the slightest doubt about the facts, *First Nat. Bank v. Chemical Products, Inc.,* 637

S.W.2d 373, 375 (Mo.App.1982), the facts must be material which have probative force as to the controlling issues. *First Nat. Bank, supra,* 637 S.W.2d at 375.

Viewed by the standards relating to summary judgment, we conclude that the trial court properly granted summary judgment in favor of respondent.

The judgment is affirmed.

CARL R. GAERTNER and SMITH, JJ., concur.