In re the Marriage of Sharon Ann JOHNSON, Petitioner/Appellant,

v.

Peter David JOHNSON, Respondent/Respondent,

and

Vernedda Johnson, Third–Party Respondent/Respondent.

No. 53687.

Missouri Court of Appeals, Eastern District, Southern Division.

Jan. 31, 1989.

---

4. Sec. 339.040 presumably places the burden as to initial licensing on the applicant.

712

David P. Senkel, Hillsboro, for petitioner/appellant.

Kevan L. Karraker, Farmington, for Vernedda Johnson.

Randall S. Parker, St. Louis, for Peter D. Johnson.

SATZ, Judge.

This is a dissolution action. The wife's mother-in-law claims ownership of the stock and assets of a corporation which, the wife alleges, are marital property. The wife joined the mother-in-law as a "third-party respondent". The trial court granted the mother-in-law's motion for summary judgment and made its order final for purposes of appeal. The wife appeals. We reverse and remand.

The procedural history of this action begins in June, 1985, with the wife filing a petition for legal separation. There then followed the husband's cross-petition for dissolution, the wife's amended petition for dissolution, additional amended petitions and amended cross-petitions, extensive discovery, including three sets of interrogatories, four depositions, two motions to produce, requests for admissions, as well as motions to make more definite and certain, to dismiss and for summary judgment, all reflected in more than sixty-five docket entries. We acknowledge the vigor of counsel and salute the patience of the trial court. We focus, however, only on that part of the process relevant to this appeal.

In the wife's first amended petition for dissolution, she alleges that her mother-in-law claims an interest in the stock and assets of the St. Francois Securities Corporation, which, the wife alleges, are marital property. The wife joined the mother-in-law as a "third-party respondent." In response, the mother-in-law filed a motion for summary judgment, with her supporting affidavit, seeking a judgment that she is the owner of all the stock of the corporation. Subsequently, the wife filed a second amended petition for dissolution, and, in response, the mother-in-law filed an answer and affirmative defenses. Meanwhile, the husband set his own agenda by filing a cross-petition and amended cross-petition for dissolution in addition to his responsive pleadings to the wife's petitions. Thus, at the time of trial in July 1987, the wife's second amended petition for dissolution was pending along with the mother-in-law's motion for summary judgment and the husband's first amended cross-petition for dissolution.

With meticulous concern for her procedural rights, the wife moved for a default judgment against the husband, contending he failed to file a timely answer to her second amended petition. With equal con-

cern about his rights, the husband moved that the wife's second amended petition be stricken, contending the petition was unverified and filed after the date for filing granted by the trial court. With an even hand, the trial court granted both motions, which, for our purposes here, left in issue the mother-in-law's motion for summary judgment filed in response to the wife's first amended petition. The court then granted the motion for summary judgment.[1]

■ On appeal, the wife first attacks the striking of her second amended petition as an abuse of discretion. On August 13, 1986, in response to the wife's first amended petition, the mother-in-law filed, among other pleadings, a motion to make more definite and certain. On May 26, 1987, the trial court granted this motion and granted the wife until June 12, 1987 to file her second amended petition. The wife filed this petition four days late. Given the long procedural history of this case and the wife's insistence that the court strictly enforce her procedural rights against the husband, the trial court was well within its discretion in striking the wife's second amended petition at the husband's request.[2] *See e.g., Cento v. Cento,* 703 S.W.2d 595, 596[2] (Mo.App.1986).

The wife also attacks the court's grant of the mother-in-law's motion for summary judgment. The wife contends that she properly raised genuine issues of material fact which made the grant of summary judgment improper. We agree.

At the outset, we find it necessary to discuss the record made by the parties in supporting and opposing the motion for summary judgment. The mother-in-law did file an affidavit in support of her summary judgment. She did not, however, confine her arguments to the trial court solely to her affidavit. She referred generally to the depositions of both the wife and the husband and also referred to the deposition of an attorney who had worked with mother-in-law regarding a transfer of the stock. In opposition, the wife did not file a counter affidavit. Instead she relied on specific parts of the depositions of the husband and mother-in-law as well as on specific parts of husband's property statement and of his verified pleadings.[3] These references were read into the record without objection.

■ This is not the first time this Court has been faced with an imprecise record when reviewing a ruling on a motion for summary judgment. Repeatedly, attorneys have elected to live dangerously by relying on this type of record.[4] Here, none of the parties objected to the specific references read into the record. Those specific matters, thus, were before the trial court and must be considered in determining if there is a genuine issue of fact concerning the ownership of the shares of stock in issue.

1. From the record, it appears that counsel made most of their arguments and the court reached its decisions off the record, in chambers. The court then announced its decisions on the record, in open court.

2. The wife's second amended petition was not verified. However, we do not address the issue of lack of verification. See *Drury Displays, Inc. v. The Board of Adjustment of the City of St. Louis,* 760 S.W.2d 112 (Mo. banc 1988).

3. The Husband's Property Statement and his Statement of Income and Earnings were filed by the wife as a "supplemental legal file." No objection to this filing has been made.

4. This Court has repeatedly warned counsel:

It is not the function of the appellate court to sift through material furnished by the parties on appeal to determine the exact nature of the evidentiary material submitted to the trial court in a summary judgment proceeding. The preferable course for both the moving and opposing parties to follow in a motion for summary judgment would be to enumerate all portions of the transcripts and depositions referred to in the motion and to properly authenticate or certify the documents which they wish the trial court to consider in ruling on the motion. Unless the record reveals that the documents which the parties purportedly relied upon in the trial court were properly made part of the record, we cannot say that they were before the trial court and they are not now before us.
*Hill v. Air Shields, Inc.,* 721 S.W.2d 112, 116[4] (Mo.App.1986); *See e.g. Karney v. Wohl,* 747 S.W.2d 214, 215–16 (Mo.App.1988); *Schelle v. Mercantile Bancorporation, Inc.,* 741 S.W.2d 720, 722 (Mo.App.1988).

■ The mother-in-law contends the wife's failure to file a counter affidavit causes the facts in the mother-in-law's affidavit to be deemed admitted. The cases cited by the mother-in-law do not support this argument. *See Barks v. Bi–State Dev. Agency,* 727 S.W.2d 464, 466[1] (Mo. App.1987); *Morley v. Ward,* 726 S.W.2d 799, 801 (Mo.App.1987); *Southard Constr. Co. v. Structural Systems,* 715 S.W.2d 560, 562–63[1] (Mo.App.1986). These cases, as others, either state or hold the obvious. The facts in an affidavit filed in support of a motion for summary judgment are deemed admitted, absent a verified, relevant response. Thus, it is often said, the response must be "by affidavit or as otherwise provided by rule," *Barks v. Bi–State Dev. Agency, supra.* 727 S.W.2d at 466, and Rule 74.04(e) specifically provides:

> The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

Considering the relationship of the parties here, the wife used the most appropriate verified statements available to her to counter the mother-in-law's affidavit.

■ In her affidavit, the mother-in-law said she is "the absolute owner of all the shares of the corporation" and has been "the shareholder of 98 shares ... from the time of said corporation's incorporation." She also said she "discussed the transfer of some of [her] shares ... to [the husband] for estate planning purposes but no such transfers have been completed", and she neither "sold [nor] agreed to sell any of [her] shares of or interest in the corporation." Finally, she stated she has "not made statements to [the wife] that [the wife] or [the husband] were the owners of the corporation, could purchase [her] shares of or interest in the corporation, or that [she] would give either or both of them [her] shares of or interest in the corporation in exchange for operating or managing the corporation." In addition, counsel for the mother-in-law read from the deposition of an attorney the mother-in-law had contacted regarding a transfer of the stock. He said he was never directed to transfer any of the stock jointly to wife and husband.[5]

To controvert the mother-in-law's evidence, the wife relied on the husband's verified cross-petition, his verified statement of property, as well as the deposition testimony of the mother-in-law, of the husband and of the attorney who was asked for advice about the stock transfer. In his original verified cross-petition and his verified property statement, the husband stated he had an interest in ninety-seven shares of the St. Francois Securities Corp. He received those shares, he stated, as gifts, from 1970 to 1980. In those same documents, he claimed an interest in the house, land, airplane, and cars used by the wife and the husband during the marriage. This property the mother-in-law and the husband are now asserting are assets of the corporation.

Counsel for the wife also read specific parts of the husband's deposition testimony into the record. The husband testified that he owned ninety-seven shares of the corporate stock, the wife owned one share, their daughter owned one share, and the mother-in-law owned the remaining share. He also testified that the stock was conveyed by the mother-in-law over a period of time in a manner calculated to minimize the tax consequences. Counsel for the wife also read portions of the mother-in-law's deposition testimony. The mother-in-law admitted she received payments from the corporation for "letting them [the husband and the wife] come down and take over the cemetery [corporation]." She also admitted she had discussed transfer of the stock and had started the transfer by having appropriate documents prepared. She "signed a couple of them, and they were mailed to Houston and lost." She also volunteered her legal conclusions that these documents "were never officially completed", and, because

---

5. Counsel for the mother-in-law synopsized and paraphrased statements from the mother-in-law's, the husband's and the wife's depositions. Counsel did not read from the depositions and frequently did not even give the page to which he was referring. We are not obliged to search through depositions to verify counsel's synopses. *Hill v. Air Shields, supra.,* 721 S.W.2d at 116.

they were lost in the mail, "they weren't completed, then, legally;" and "[the husband] can't legally say that I gave [the shares of stock] to him."

From all these verified statements and testimony, it is obvious the mother-in-law concluded she was and is the owner of the corporation and she had not made a legal transfer of any of the stock of the corporation. The mother-in-law says she owns all the stock; yet, she admits starting to transfer it without offering any documentary evidence to show she did not complete the transfer. Her conclusions are interesting but not binding. Moreover, it is clear that no stock certificates in the mother-in-law's name were proffered as evidence to support her conclusion. Furthermore, a stock certificate is simply documentary evidence of title to that stock. *Kaiser v. Moulton*, 631 S.W.2d 44, 48[6] (Mo.App. 1981). As such, it does raise a presumption of ownership. *Zorensky v. Wellston Clothing Co.*, 223 S.W.2d 851, 854[1] (Mo. App.1949); § 400.8–102(1)(a)(iv), RSMo 1986. However, this presumption is rebuttable. *Neidert v. Neidert*, 637 S.W.2d 296, 302[9] (Mo.App.1982); *Duncan v. Kelly*, 435 S.W.2d 29, 32–33[1] (Mo.App.1968); see also § 400.8–105(2)(c), RSMo 1986.

In contrast with the mother-in-law's assertions, her son, the husband, asserted in his verified, now abandoned cross-petition and in his verified, original property statement that the stock in question was acquired during the marriage of the husband and wife. These are admissions that can be used against the husband. *Bledsoe v. Northside Supply & Dev. Co.*, 429 S.W.2d 727, 730[3] (Mo.1968). Although they may not be used as admissions against the mother-in-law, the husband's statements combined with the mother-in-law's statements raise an issue of fact: what the mother-in-law did regarding transferring the stock and whether the stock or an interest in the stock was issued or transferred to the husband and/or the wife. This, in turn, leaves the ownership of the stock in issue. Therefore, summary judgment was not proper here. Rule 74.04.

Judgment reversed and remanded.

SMITH, P.J., and GRIMM, J., concur.