**Virginia F. EARL, Respondent,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Appellants.**

**No. WD 44280.**

Missouri Court of Appeals, Western District.

Nov. 5, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 24, 1991.

Application to Transfer Denied Jan. 28, 1992.

P. Pierre Dominique, Jefferson City, for appellants.

Leonard K. Breon, Warrensburg, for respondent.

Before BERREY, P.J., and ULRICH and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

This action was instituted by respondent, Virginia Earl, for a declaration of the rights and duties of all the parties under certain insurance policies that appellant, State Farm Mutual Automobile Insurance Company, sold to Michael VanMeter and his parents, Marian and Beth VanMeter.

Both State Farm and Mrs. Earl filed motions for summary judgment. The court below denied State Farm's motion and granted summary judgment to Mrs. Earl. State Farm appeals from the trial court's judgment. The judgment is reversed and the cause remanded with instructions for the trial court to enter judgment in favor of State Farm on its motion for summary judgment.

Marion and Beth VanMeter's son, Michael VanMeter, was involved in a motor vehicle collision with respondent, Virginia Earl, on April 29, 1988. At the time of the accident, Michael was sixteen and resided with his parents. The vehicle Michael was driving, a 1985 Ford pickup, was owned by his parents and was insured by State Farm under Policy No. 504 8064–B22–25 which provided liability coverage in the amount of $50,000.00 per person and $100,000.00 per accident. The applicability of No. 504 8064–B22–25, the insurance policy covering the Ford pickup involved in the accident, was not in dispute. State Farm paid the liability limits, $50,000.00, to Mrs. Earl.

Michael and his father were co-owners of another vehicle, a 1971 Dodge Charger, insured by State Farm under Policy No. 502 4650–E04–25. The applicability of the second policy, No. 502 4650–E04–25, was contested by the parties. This policy, applicable to the 1971 Dodge Charger, contains a section covering the use by the insured of other cars. This section extends coverage to the use by an insured of, "a newly acquired car, a temporary substitute car or a non-owned car." On motion for summary judgment, the trial court found that the language defining "temporary substitute car" was ambiguous and that "such ambiguity must be resolved in favor of the policy holder and against the insurance company which wrote the policy."

■ The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists to bar a grant of summary judgment by the trial court. *West v. Jacobs,* 790 S.W.2d 475, 479–90 (Mo.App.1990); Rule 74.04(c). A genuine issue of fact exists where there is the slightest doubt about that fact.

*Gast v. Ebert,* 739 S.W.2d 545, 546 (Mo. banc 1987).

In this appeal, State Farm contends that the trial court erred in granting Mrs. Earl's motion for summary judgment because the language in the policy relating to the term "temporary substitute car" was not ambiguous as a matter of law and that Michael VanMeter was not operating a "newly acquired car", "temporary substitute car" or "non-owned car" at the time of the accident under the terms of the policy.

The Missouri Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Western Cas. & Sur. Co.,* 477 S.W.2d 421 (Mo. banc 1972), considered policy provisions similar to those in the case at bar. The Supreme Court noted that the insurance policy was intended to provide coverage on the described automobile in return for the payment of a premium based on single car coverage. *Id.* at 423. Both the policy in *State Farm v. Western* and the policy in this case provide limited additional coverage for a "temporary substitute car", and a "non-owned car". This additional coverage is commonly referred to as the "drive other cars" provision. *State Farm Mut. Auto. Ins. Co. v. Johnson,* 586 S.W.2d 47, 50 (Mo.App.1979). In reviewing the specific policy provisions, it is beneficial to be cognizant of the basic principle behind such "drive other cars" provisions, as stated in *State Farm v. Western:*

> The effect and purpose of such a clause is well stated in a statement with reference to "drive other cars" provisions in an Annotation in 86 A.L.R.2d 937, 940, as follows: "The purpose of the 'drive other cars' provision in an automobile liability policy is to cover occasional or incidental use of other cars without the payment of an additional premium, but to exclude the habitual use of other cars, which would increase the risk on the insurance company without a corresponding increase in the premium."

*State Farm v. Western,* 477 S.W.2d at 425.

The language of such "drive other cars" provision of the policy under review herein contains the following definitions:

**Newly Acquired Car**—means a **car** newly owned by **you** or **your spouse** if it:

1. replaces **your car**; or
2. is an added car and:
   a. if it is a **private passenger car**, we insure all other **private passenger cars,** or
   b. if it is other than a **private passenger car**, we insure all **cars**

owned by **you** and **your spouse** on the date of its delivery to **you** or **your spouse;**

but only if **you** or **your spouse:**

1. tell us about it within 30 days after its delivery to **you** or **your spouse;** and
2. if **you** or **your spouse** has more than one of our **car** policies, tell us which one is to apply; and
3. pay us any added amount due.

**Non–Owned Car**—means a **car** not:

1. owned by,
2. registered in the name of, or
3. furnished or available for the regular or frequent use of:

**you, your spouse,** or any **relatives.**
The use has to be within the scope of consent of the owner or **person** in lawful possession of it.

\* \* \* \* \* \*

**Relative**—means a **person** related to **you** or **your spouse** by blood, marriage or adoption who lives with **you.** It includes **your** unmarried and unemancipated child away at school.

\* \* \* \* \* \*

**Temporary Substitute Car**—means a **car** not owned by **you** or **your spouse**, if it replaces **your car** for a short time. Its use has to be with the consent of the owner. **Your car** has to be out of use due to its breakdown, repair, servicing, damage or **loss.** A **temporary substitute car** is not considered a **non-owned car.**

There is no contention that the vehicle in question was a "newly acquired" car. Mrs. Earl argued that the car was either a "nonowned car" or a "temporary substitute car." The trial court, finding the language defining "temporary substitute car" ambiguous, granted judgment to Mrs. Earl.

■ An ambiguity in an insurance contract exists only where there is doubt or uncertainty as to its meaning and it is fairly susceptible to two interpretations. *Automobile Club Inter–Ins. Exchange v. Farmers Ins. Co.*, 778 S.W.2d 772, 774 (Mo.App.1989). Ambiguity arises only where the policy's contents reveal duplicity, indistinctness or an uncertainty in meaning. *Id.* The interpretation of policy terms which are not ambiguous is a question of law and, as such, an appellate court is not required to defer to the findings of the trial court. *Fremont Indem. Co. v. Lawton–Byrne–Bruner Ins. Agency Co.*, 701 S.W.2d 737, 740 (Mo.App.1985).

■ The meaning of "temporary substitute car" has been explored previously by the Missouri courts. The purpose of a clause extending coverage to a "temporary substitute car", "is to make the coverage of the policy reasonably definite as to the vehicle the insured intended to use, while at the same time permitting the insured to continue to operate another motor vehicle should the particular vehicle described in the policy be temporarily out of commission...." *State Farm Mut. Auto. Ins. Co. v. Johnson*, 586 S.W.2d at 51. To bring an automobile under this clause it must be shown that the vehicle covered by the policy "is incapable of being driven in any normal use...." *Id.* This is the plain and ordinary meaning assigned to the terms used in the definition in the State Farm policy; a vehicle is incapable of being driven where there is "breakdown, repair, servicing, damage, or loss." There is nothing in this clause, no word used singularly or all words read together which would render the meaning uncertain and therefore ambiguous.

A "temporary substitute car", therefore, is used when the insured's car is out of use due to "breakdown, repair, servicing, damage or loss." The only testimony as to why Michael was driving his parents' pickup is found in Michael's deposition, during the following exchange:

Q. And why were you driving your father's pickup truck on the date of this wreck?

A. I don't know.

Q. Was your 1971 Charger licensed and in running condition when the wreck happened?

A. Yes.

Q. Any reason why you weren't driving your Charger?

A. I have problems with it or I had problems with it from time to time, an old car and wasn't, you know, and sometimes didn't know if you was going to make it to where you was going or not.

Michael's own testimony established that the car was operable at the time of the collision. Thus, it was not out of use because of "breakdown, repair, servicing, damage or loss."

Michael's undisputed testimony in his deposition reveals that there was no particular reason, corresponding with the policy's requirements, why he was driving his parent's pickup truck. His car was operable, although old and plagued with problems. "The 'Temporary Substitute Automobile' extended coverage does not, and is not meant to apply to those cases when the insured uses a non-owned automobile out of preference or convenience in lieu of the automobile described in the contract of insurance, ..." *State Farm Mut. Auto. Ins. Co. v. Johnson*, 586 S.W.2d at 55. As a matter of law, this court finds that the policy in question afforded no coverage under the "temporary substitute car" provision and that the trial court erred in granting summary judgment to Mrs. Earl.

Mrs. Earl attempts to argue in the alternative that the pickup was a "non-owned car" within the meaning of the liability coverage on the 1971 Charger. The definition that Mrs. Earl relies upon, however, is contained in Policy No. 504 8064–B22–25, the policy on the pickup, in a 6025K amendment. The declarations page of Policy No. 502 4650–E04–25, the policy on the Dodge Charger, does not show the 6025K amendment as part of the policy. The applicable definition in that policy of "non-owned car", as set out above, provides that the car be not owned by "you, your spouse, or any relatives." The pickup was owned by Michael's parents with whom he lived, coming within the definition of the term "relative", and thus it was not within the meaning of the policy.

The trial court erred in granting summary judgment to Mrs. Earl and by not granting summary judgment in State Farm's favor as the pickup was not, by definition, a "newly acquired car", a "temporary substitute car" or a "non-owned car" at the time of the accident.

The judgment is reversed and the cause remanded for the entry of summary judgment on State Farm's motion.

All concur.