TRI–STATE OSTEOPATHIC HOSPITAL ASSOCIATION, INC., d/b/a Oak Hill Hospital, a Missouri not-for-profit hospital association, Plaintiff–Respondent,

v.

Claude BLAKELEY, Newton County Collector, Defendant–Appellant,

and

Don Brady, City of Seneca Collector, Defendant.

No. 18119.

Missouri Court of Appeals, Southern District, Division Two.

March 1, 1993.

John Sims, Ruyle & Sims, Neosho, for defendant-appellant.

Paul G. Taylor, Myers, Taylor and Whitworth, P.C., Webb City, for plaintiff-respondent.

GARRISON, Judge.

The trial court entered summary judgment for Tri–State Osteopathic Hospital Association (Tri–State) in its suit to recover ad valorem real estate taxes paid under

protest. Defendant Claude Blakeley, Newton County Collector (Collector), appeals.[1]

Tri–State is a not-for-profit corporation whose Oak Hill Hospital in Joplin, Missouri is exempt from city and county real estate taxes pursuant to § 137.100(5).[2] The taxes in issue here were those assessed on real estate in Seneca, Missouri owned by Tri–State and on which it operated the "Seneca Clinic" (Clinic property).

The issue was joined by the Collector's denial of Tri–State's pleaded allegation that the Clinic property was exempt under § 137.100(5) because it was "actually and regularly used exclusively for purposes purely charitable, to-wit, to provide medical care and treatment as an adjunct part of Plaintiff's not-for-profit IRS Code 501 C (3) hospital operations." The summary judgment in issue here (ordering refund of the 1990 and 1991 real estate taxes) was entered pursuant to Tri–State's motion supported by the affidavit of its Chief Financial Officer and Vice President of Financial Affairs. The Collector filed no counter-affidavits or other evidence in response to the motion.

The sole point presented in this appeal is whether there was a genuine issue of fact concerning the tax exempt status of the Clinic property pursuant to § 137.100(5) so as to make the summary judgment inappropriate. The Collector argues that the summary judgment was not authorized because the affidavit filed by Tri–State failed to demonstrate its entitlement to a judgment as a matter of law by showing the absence of material issues of fact. Tri–State contends that the summary judgment was justified because of the Collector's "failure to oppose the motion by raising a genuine factual issue instead of relying on mere denial, speculation and conjecture."

■ The general rule is that a party, opposing a motion for summary judgment supported by affidavit or as otherwise provided in Rule 74.04,[3] may not rely upon mere allegations or denials of his pleading, but must set forth, by affidavit or otherwise, specific facts showing a genuine issue for trial. Rule 74.04(e); *Wood & Huston Bank v. Malan*, 815 S.W.2d 454, 457 (Mo. App.1991). If the opposing party files no verified denials, facts stated in affidavits and exhibits filed in support of a motion for summary judgment are admitted. *Cherry v. City of Hayti Heights*, 563 S.W.2d 72, 75 (Mo. banc 1978). However, the fact that the affidavit here may be deemed admitted by reason of the Collector's failure to respond by affidavit or otherwise does not necessarily conclude the inquiry.

■ The moving party has the burden to show that there is no genuine issue as to any material fact and that the summary judgment is appropriate or authorized. *Earl v. State Farm Mut. Auto. Ins. Co.*, 820 S.W.2d 623, 624 (Mo.App.1991). While that showing need no longer be upon "unassailable proof," the right to summary judgment must clearly appear as a matter of law. *Schwartz v. Lawson*, 797 S.W.2d 828, 832 (Mo.App.1990); *Hayes v. Hatfield*, 758 S.W.2d 470, 472 (Mo.App.1988). In satisfying that burden, Rule 74.04(c) requires that the documents or other evidence filed in support of a motion for summary judgment demonstrate that the party is entitled to the relief sought. It provides, in pertinent part:

> The judgment sought shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

This is consistent with the language in *Maryland Cas. Co. v. Martinez*, 812 S.W.2d 876, 879 (Mo.App.1991), where the court said:

> Summary judgment is a drastic remedy and is inappropriate unless the prevailing

---

1. The City of Seneca Collector, although a defendant, is not a party to this appeal, having sought no relief from the Order granting summary judgment.

2. Statutory references are to RSMo 1986 unless otherwise indicated.

3. Rule references are to Missouri Rules of Civil Procedure (1992).

party has shown that he is entitled to judgment as a matter of law.

■ The Collector's argument that, notwithstanding the fact that he filed no counter-affidavits or other evidence in response to the motion for summary judgment, Tri–State must still show that it is entitled to a judgment as a matter of law, finds support in the case law of this state. For example, the Missouri Supreme Court said, in *E.O. Dorsch Electric Co. v. Plaza Construction Co.*, 413 S.W.2d 167, 170 (Mo.1967):

> The failure of plaintiff to file any counteraffidavit or present any proof in respect to the motion for summary judgment forces us to accept as true, for the purposes of this appeal, that there is no factual issue concerning the terms of the contracts attached to the motion for summary judgment. However, this omission on the part of plaintiff does not necessarily require that judgment be entered against it. As stated in *Cure v. City of Jefferson, Mo.*, 380 S.W.2d 305, 310, "Rule 74.04 does not 'require the grant of summary judgment in a case where such judgment is not proper even though the facts be taken as in the moving party's affidavit. The court may deny the motion if for any reason summary judgment may be inappropriate, even though the opposite party has not submitted an affidavit.'"

*See also Dietrich v. Pulitzer Publishing Co.*, 422 S.W.2d 330, 333 (Mo.1968); *Kennon v. Citizens Mut. Ins. Co.*, 666 S.W.2d 782, 784 (Mo.App.1983); *Seliga Shoe Stores v. City of Maplewood*, 558 S.W.2d 328, 331 (Mo.App.1977).[4] This court said, in *Phegley v. Porter–DeWitt Construction Co.*, 501 S.W.2d 859, 864 (Mo.App.1973):

> We are cognizant, as defendant's counsel remind us, that plaintiffs filed no coun-

teraffidavit or other proof after the deposition of defendant's job superintendent Matkin was taken, but that does not require that summary judgment be entered for defendant where, as here, that action would be inappropriate.

Rule 74.04(e) itself authorizes entry of a summary judgment for failure to respond to a motion supported by affidavit, but acknowledges that it is not automatic by conditioning it with the words "if appropriate." Without intending to encourage or approve the practice of not responding to a motion for summary judgment which is supported by affidavit or otherwise as provided by Rule 74.04, we agree with the Collector that, under the circumstances here, failure to file counter-affidavits or other evidence in response to the motion does not alone establish that the summary judgment was authorized.

■ We must, therefore, review the record, including the motion for summary judgment and supporting affidavit, to determine if it establishes Tri–State's entitlement to the judgment as a matter of law. In so doing, we recognize the general rule that a summary judgment should be entered only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[5] Rule 74.04(c); *St. Charles County v. Dardenne Realty Co.*, 771 S.W.2d 828, 830 (Mo. banc 1989). The summary judgment is reviewed in the same manner as a court-tried or equity proceeding and is to be sustained if it would be proper under any theory. *McCready v. Southard*, 671 S.W.2d 385, 387 (Mo.App.1984). It has

---

**4.** We recognize that these cases also discuss the requirement that the moving party show entitlement to summary judgment based upon "unassailable proof" and that this is no longer the appropriate standard. *Schwartz v. Lawson, supra.* The change of Rule 74.04 to eliminate the requirement of "unassailable proof" did not modify that portion of the Rule authorizing summary judgment, "if appropriate," for failure to properly respond to a motion. Likewise, Rule 74.04(c) still requires that the showing establish that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law.

**5.** No discovery is available for review here because none was conducted prior to entry of the summary judgment. The allegation of tax-exempt status in Tri–State's pleading was denied by the Collector. Therefore, this review concerns the sufficiency of the affidavit filed in support of the motion.

been said, however, that great caution should be exercised in granting a summary judgment because it "borders on denial of due process." *Olson v. Auto Owners Ins. Co.,* 700 S.W.2d 882, 884 (Mo.App.1985). Accordingly, we must review the entire record in a light most favorable to the party against whom the summary judgment was entered, *Fisher v. Scott & Fetzer Co.,* 664 S.W.2d 662, 663 (Mo.App.1984), giving that party all reasonable inferences which may be drawn from the evidence in determining whether a genuine issue of fact exists. *Gast v. Ebert,* 739 S.W.2d 545, 546 (Mo. banc 1987); *Schelle v. Mercantile Bancorporation, Inc.,* 741 S.W.2d 720, 722 (Mo.App.1987).

■■■ Additionally, we are mindful of the following principles concerning claims of exemption from taxation: Taxation is the rule and exemption is the exception, *Missouri Church of Scientology v. State Tax Comm'n,* 560 S.W.2d 837, 844 (Mo. banc 1977), and *Midwest Bible & Missionary Inst. v. Sestric,* 364 Mo. 167, 174, 260 S.W.2d 25, 30 (1953); claims of exemption from taxation are not favored in the law, *Community Memorial Hospital v. City of Moberly,* 422 S.W.2d 290, 294 (Mo.1967); statutes which grant exemption from taxation must be strictly, but reasonably, construed against the party seeking the exemption, *Iron County v. State Tax Comm'n,* 437 S.W.2d 665, 668 (Mo. banc 1968), and *Community Memorial Hospital,* 422 S.W.2d at 294; and the party who claims exemption from taxation bears a substantial burden to prove that the property is within the exempted class, *City of St. Louis v. State Tax Comm'n,* 524 S.W.2d 839, 844 (Mo. banc 1975).

In this case, the claim of exemption from real estate taxes stems from § 137.100(5). That statute provides, in part:

The following subjects are exempt from taxation for state, county or local purposes:

. . . .

(5) All property, real and personal, actually and regularly used exclusively ... for purposes purely charitable and not held for private or corporate profit, except that the exemption herein granted does not include real property not actually used or occupied for the purpose of the organization but held or used as investment even though the income or rentals received therefrom is used wholly for religious, educational or charitable purposes.

■■■ The criterion for determining whether property is exempt from taxation under § 137.100(5) has been described by the Missouri Supreme Court in *Franciscan Tertiary Prov. v. State Tax Comm'n,* 566 S.W.2d 213 (Mo. banc 1978). In that case, the court established the following three-pronged test which must be met in order to establish that the property is "actually and regularly used exclusively for purposes purely charitable" and thereby exempt under § 137.100(5): (1) it must be owned and operated on a not-for-profit basis; (2) it must be dedicated unconditionally to the charitable activity, as that term is defined in *Salvation Army v. Hoehn,* 354 Mo. 107, 188 S.W.2d 826 (banc 1945),[6] so that there will be no profit to individuals or corporations; and (3) the dominant use of the property must be for the benefit of an indefinite number of people and there must also be a benefit to society generally. *Franciscan,* 566 S.W.2d at 224. *See also Sunday School Board of Southern Baptist Convention v. Mitchell,* 658 S.W.2d 1, 5 (Mo. banc 1983), and *Rolla Apartments v. State Tax Comm'n,* 797 S.W.2d 781 (Mo. App.1990).

■■■ The *Franciscan* court gave some guidance in applying this test. If the

6. "Probably the most comprehensive and carefully drawn definition of a charity that has ever been formulated is that it is a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government." *Franciscan,* 566 S.W.2d at 220, referring to *Salvation Army v. Hoehn, supra.*

purpose of the activity being operated is "gaining a profit" it will not be exempt even if the profits are turned over to a parent organization "to be used for what are admittedly independently . . . charitable purposes." *Franciscan*, 566 S.W.2d at 224. The not-for-profit requirement does not require operation at a deficit "provided, of course, that any such excess of income over expense is achieved incidentally to accomplishment of the dominantly charitable objective and is not a primary goal of the project, and provided further that all of such gain is devoted to the charitable objectives of the project." *Id. See also Sunday School Board of Southern Baptist Convention*, 658 S.W.2d at 5–7.

■■■ Our review of the affidavit[7] filed in support of the motion here leads us to the conclusion that it does not demonstrate on its face that the use of the Clinic property meets the test for exemption described in the *Franciscan* case, *supra*. This is especially true considering that the Collector is entitled to a review of the record in a light most favorable to him, giving him all reasonable inferences.

The affidavit in question does not establish whether the Clinic property is actually operated on a not-for-profit basis or, if it does make a profit, whether such profit is incidental and not a primary goal in the operation of the property. Likewise, it does not necessarily establish that the Clin-

ic property is dedicated unconditionally to charitable activities.

The fact that the Clinic was operated as an adjunct[8] of the main hospital does not necessarily mean that its purpose was something other than generating a profit. This possibility is certainly not relieved by the statement in the affidavit that the patients at the *main hospital facility* "are admitted at the treating physician's discretion and plaintiff provides treatment for all patients so admitted without regard to the patient's ability to pay," whereas patients at the *Clinic* are treated "at the physician's discretion." Likewise, the statements in the affidavit that the Clinic is staffed with physicians under contract to Tri–State, and that the Clinic is utilized to provide medical care as an integral part of Tri–State's overall mission to provide such care and treatment, could apply just as well to a Clinic operated as a competitive business with its primary goal being that of profit. That type of use would not qualify as "charitable" under the statute. See discussion in *Community Memorial Hospital*, 422 S.W.2d at 297. The affidavit certainly does not establish that the Clinic is used "exclusively . . . for purposes purely charitable and not held for private or corporate profit" as required by § 137.100(5) and as that statute is interpreted by the *Franciscan* case, *supra*.

---

7. The Affidavit read in pertinent part:

    1. That affiant is employed by Plaintiff, Tri–State Osteopathic Hospital Association, a Missouri not-for-profit Corporation doing business as Oak Hill Hospital. . . .

    2. That Plaintiff is a not-for-profit Corporation organized as a hospital association under the laws of the State of Missouri, and is exempt from income taxation by the Internal Revenue Service pursuant to Internal Revenue Code Section 501 C(3). . . .

    3. That Plaintiff's main hospital facility, located at 34th Street and Indiana, Joplin, Newton County, Missouri, has been exempt from city and county real estate taxes under section 137.100(5), RSMo.1986, since the hospital began its not-for-profit operation.

    . . . .

    5. That the Seneca Clinic is staffed with physicians under contract with Plaintiff.

    6. That all other persons staffing the Seneca Clinic are employees of Plaintiff.

    7. That patients at Plaintiff's main hospital facility are admitted at the treating physician's discretion and Plaintiff provides treatment for all patients so admitted without regard to the patient's ability to pay.

    8. That patients at Plaintiff's Seneca Clinic are treated at the physician's discretion.

    9. That the Plaintiff utilizes the Seneca Clinic to provide medical care and treatment to area patients as an integral part of Plaintiff's overall mission to provide such care and treatment.

    10. That the Seneca Clinic was in operation on November 1, 1990, as an adjunct of Plaintiff's main hospital operation and has been in continuous operation since that time. . . .

8. The term "adjunct" is defined as "something joined or added to another thing but not essentially a part of it." *Webster's Third New International Dictionary* 27 (1976).

In its brief, Tri–State makes reference to facts and contentions which are not otherwise a part of the record. These include statements about what would have been reflected if the Clinic's income had been reported separately and the reasons it used some of the language contained in the affidavit. These statements are not properly before this court and cannot be considered. *Small v. Highway and Transp. Comm'n,* 815 S.W.2d 495, 497 (Mo.App.1991).

 Tri–State also argues that entry of the summary judgment was "just and proper" because its operation of the Clinic "entitles it to be exempt from real estate taxes." The pertinent inquiry is the use made of the property in question and not merely the charitable character of the owner. *Sunday School Board of Southern Baptist Convention,* 658 S.W.2d at 5; *Franciscan,* 566 S.W.2d at 223; *Community Memorial Hospital,* 422 S.W.2d at 294; *Senior Citizens Bootheel Serv., Inc. v. Dover,* 811 S.W.2d 35, 37 (Mo.App.1991). Tri–State, itself, admits as much in its brief when it "acknowledges that the exemption does not automatically extend to all real estate it owns simply by virtue of ownership." As indicated, the affidavit in question does not establish that the "use" of the Clinic property qualifies it for exemption under the statute as interpreted in the *Franciscan* case, *supra.*

The inquiry here is whether the supporting affidavit filed by Tri–State demonstrated that it was entitled to summary judgment as a matter of law because of the absence of genuine issues of material fact. "Material facts" have been described as those which "have such legal probative value as would control or determine the litigation." *Schneider v. Forsythe Group, Inc.,* 782 S.W.2d 139, 142 (Mo.App.1989). Stated another way, the United States Supreme Court said, in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986):

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

Clearly, facts showing entitlement to an exemption under § 137.100(5) would be "material facts" in this litigation. Accordingly, we hold that the motion for summary judgment with the supporting affidavit was not sufficient to show that Tri–State was entitled to a judgment as a matter of law.

The Order granting summary judgment is, therefore, reversed and the cause remanded for further proceedings.

MONTGOMERY, P.J., and FLANIGAN, J., concur.