**Russell KNIPP, et al., Appellants,**

v.

**TRUCK INSURANCE EXCHANGE,
Respondent.**

**No. WD 46453.**

Missouri Court of Appeals,
Western District.

April 20, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1993.

Application to Transfer Denied
Aug. 17, 1993.

Peggy D. Richardson, Jefferson City, for appellants.

Michael R. Baker, Columbia, for respondent.

Before LOWENSTEIN, C.J., and TURNAGE and SPINDEN, JJ.

LOWENSTEIN, Chief Judge.

This is an action under § 379.200, RSMo Cum.Supp.1992, which paraphrased and as applicable here, allows an unsatisfied judgment creditor in a suit for bodily injury or death to file an equitable action against the defendant and the insurer to reach the "insurance money." The appellants, an injured passenger and his spouse and the survivors of another passenger, present one issue on appeal: whether a 1986 truck owned by Rex Combs qualifies as a substi-

tute automobile for Combs' 1981 GMC Crew Cab under an insurance policy issued by Truck Insurance Exchange (Exchange) to his family's business. In 1989, three lawsuits, later consolidated, arose out of an accident Combs had while on a job for Combs Construction Company in his *1986 Chevrolet* pickup truck insured by Farmers Insurance Company (Farmers). As a result of the accident, Russell Knipp suffered serious injury and Kenneth Walden died. The trial court entered judgment in favor of the plaintiffs in the consolidated lawsuit. Prior to receiving judgment in their favor, the parties entered an agreement to limit Combs' individual liability to the extent of applicable insurance proceeds. After Farmers paid the limits of the policy, the appellants still had unsatisfied judgments in these amounts:

| | |
|---|---|
| Russell Knipp | $400,000.00 |
| Jo Knipp (spouse) | $ 40,000.00 |
| Deborah Walden (widow) | $330,000.00 |
| Ashley Renee Walden (daughter) | $110,000.00 |

On February 11, 1991, the appellants filed an equitable action pursuant to § 379.-200, against Exchange and Rex Combs. The suit sought a $500,000 judgment, the total coverage available under the Exchange insurance policy on the *1981 GMC Crew Cab.* The policy insured Arlie Combs, Barry Combs and Randy Combs d/b/a Combs Construction. The appellants argued Combs Construction Company leased from Rex Combs the 1986 Chevrolet pickup involved in the accident as a substitute automobile for the 1981 Crew Cab covered by the Exchange policy. The court in this equitable suit found the 1986 Chevrolet pickup did not qualify as a substitute automobile under the Exchange policy and denied the appellants the proceeds.

The parties tried the case to the court on the basis of the pleadings, discovery, stipulated facts and exhibits and written suggestions. Sometime in March 1988, Rex Combs joined employees of Combs Construction on a job near Appleton City during which they installed a water line. The company provided a trailer on the job site so the employees could stay in Appleton City during the week. On the Monday before the accident, several employees rode to town with Rex Combs in his 1986 Chevrolet which he had also used on the job to haul tools and construction materials. On the evening of May 18, 1988, Rex Combs, Russell Knipp and William H. Lutz, employees of Combs Construction; and Kenneth Walden, a city inspector, rode together in Rex Combs' 1986 Chevrolet. On the way back to the job site, after going to a party to find Walden's daughter, Combs failed to stop at the junction of two highways and struck the embankment on the other side of the intersection. Walden and Lutz died and Knipp suffered serious injury as a result of the accident. This appeal does not involve the cause arising from the Lutz death.

Rex Combs bought the 1986 Chevrolet half-ton pickup involved in the accident in May 1986. In January 1987, he purchased the 1981 GMC crew cab three-quarter ton pickup, the described automobile on the Exchange insurance policy. On October 7, 1987, the Combs family decided to use the 1981 truck in the business and added it to their Exchange policy which had coverage of $500,000. The 1981 truck needed some work done on it before the company could use it in the business. In his first deposition, Combs testified the 1981 truck needed new tires at the time of the Appleton City job, so he did not feel safe driving it out of town. In his second deposition, he testified the truck had new tires put on two weeks before the accident and was in good mechanical condition. He said he wanted to do some work on the interior and fix a throw out bearing before using the truck in the business.

In January 1988, prior to the accident, Combs Construction entered into an oral lease arrangement with Rex Combs to lease the 1986 Chevrolet from Combs at $300 per month for use in the business. Combs used the 1986 truck for company business from the time he bought the truck. When he did, the company would pay for all the gas.

The trial court determined the normal use of the 1981 crew cab "was just to be driven around town" as a personal vehicle and for local business. The court found

Combs had not withdrawn the 1981 crew cab from normal use because of breakdown, repairs, servicing, loss or destruction. As such, the court held the 1986 Chevrolet was not a substitute automobile for the 1981 crew cab.

■ This court will not set aside the judgment in this case unless it is against the weight of the evidence, erroneously declares the law, erroneously applies the law or there is no substantial evidence to support the decision. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). This court upholds the trial court's ruling that the 1986 Chevrolet pickup did not qualify as a substitute automobile under the Exchange policy on the 1981 truck.

The Exchange policy defines a substitute automobile as follows:

> **Substitute Automobile** means an automobile not owned by the named insured or any relative, while temporarily used with the permission, or reasonably believed to be with the permission, of the owner, as a substitute for the described automobile [the 1981 truck] when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

Although the appellants do not allege the provision is ambiguous, they urge the court to consider the intent and reasonable expectations of the parties of listing the 1981 truck as a described automobile on the Exchange insurance policy. This doctrine may apply where the contract is one of adhesion and is ambiguous.

■ An ambiguity in an insurance contract exists only where there is doubt or uncertainty as to its meaning and it is fairly susceptible to two interpretations. *Earl v. State Farm Mut. Auto. Ins. Co.,* 820 S.W.2d 623, 625 (Mo.App.1991). Ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract. *Rodriguez v. General Accident Ins. Co. of Am.,* 808 S.W.2d 379, 382 (Mo. banc 1991). The interpretation of policy terms, which are not ambiguous, is a question of law and, as such, an appellate court is not required to defer the findings of the trial court. *Earl,*

820 S.W.2d at 625. Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, this court will enforce the policy as written. *Krombach v. Mayflower Ins. Co.,* 827 S.W.2d 208, 210 (Mo. banc 1992) citing *American Family Mut. Ins. Co. v. Ward,* 789 S.W.2d 791, 795 (Mo. banc 1990).

■ In *Earl,* this court found a substitute automobile provision unambiguous. *Earl,* 820 S.W.2d at 625. Although the provisions are worded differently, this court finds the provision in this case is similarly unambiguous. The Eastern District in *State Farm Mut. Auto. Ins. Co. v. Johnson,* 586 S.W.2d 47, 54 (Mo.App.1979), referred to a substitute automobile clause, which had essential language like the policy involved in this case, as "unambiguous." The policy language in this case makes clear the terms under which a car will be considered a substitute automobile: "[one] temporarily used, ... as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." Nothing in the Exchange substitute automobile clause makes its meaning ambiguous.

■ When language in an insurance contract is ambiguous, the ambiguities are resolved in favor of the insured. *Eagle Star Ins. Co. v. Family Fun, Inc.,* 767 S.W.2d 623, 625 (Mo.App.1989). Because this case does not involve an ambiguity, this court must enforce the policy given the plain meaning of its language. *Id.* at 624. In *Earl,* this court noted the purpose of a substitute automobile clause "is to make the coverage of the policy reasonably definite as to the vehicle the insured intended to use, while at the same time permitting the insured to continue to operate another motor vehicle should the particular vehicle described in the policy be temporarily out of commission ..." *Earl,* 820 S.W.2d at 625. To bring an automobile under this clause it must be shown that the vehicle covered "is incapable of being driven in any normal use and the substitute vehicle is in use for the purpose for which the insured

vehicle would be used were it in operable conditions." *Johnson,* 586 S.W.2d at 51.

 The trial court's order indicates Rex Combs' "normal use" of the truck was for a personal vehicle and local business. The court found the 1981 truck had not been withdrawn from this use due to "breakdown, repairs, servicing, loss or destruction" because Combs could still use the truck for its normal use despite his wish to replace a noisy throw out bearing, put in a radio and work on the interior of the truck. "The 'Temporary Substitute Automobile' extended coverage does not and is not meant to apply to those cases when the insured uses a non-owned automobile out of preference or convenience in lieu of the automobile described in the contract of insurance, ..." *Earl,* 820 S.W.2d at 626. (citations omitted).

Although the court did not designate specifically this issue as a finding, the appellants contested the judge's determination of "normal use." This court notes the record lacks evidence Rex Combs used the truck for any business purpose. He testified in his depositions he had not used the truck for company business. His father, Arlie Combs, testified the truck could "possibly" have been used in the business. The evidence supports a finding Rex Combs never used the truck in the business. The 1986 truck used in the construction business could not serve as a substitute automobile for the 1981 truck because its "normal use" was not in the business. Because the company never put the truck to such use, the company could not have "withdrawn" the truck from this "normal use." As such, the 1986 truck would not qualify as a substitute automobile under the exchange policy.

 On appeal from a judge-tried case, the appellate court is concerned with the correctness of the result, not with the route taken to reach that result. *Reinecke v. Kleinheider,* 804 S.W.2d 838, 841 (Mo.App. 1991). This court holds the trial judge's decision that the 1986 Chevrolet was not a substitute automobile was not against the weight of the evidence or an erroneous application of the law.

Judgment affirmed.